**LAKEWOOD MANUFACTURING COMPANY, Plaintiff-Appellee,**

v.

**The HOME INSURANCE COMPANY OF NEW YORK et al., Defendants-Appellants.**

**No. 19413.**

United States Court of Appeals, Sixth Circuit.

Feb. 6, 1970.

Rehearing Denied April 3, 1970.

■■■■■■■■

———◆———

Jerome N. Curtis, Cleveland, Ohio, for appellants; Marvin L. Karp, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, John P. Gorman, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., on brief.

Glenn J. Seeley, Cleveland, Ohio, for appellee; Robert A. Dougherty, Marshman, Snyder & Seeley, Cleveland, Ohio, on brief.

Before McCREE, COMBS, and BROOKS *, Circuit Judges.

COMBS, Circuit Judge.

The plant of Lakewood Manufacturing Company at Westlake, Ohio, was damaged by fire on October 3, 1961. Lakewood was insured under twelve separate policies of business interruption insurance written by the defendant insurance companies. The parties were unable to agree on the amount of business interruption loss resulting from the fire and, in March, 1963, the dispute was submitted to appraisal in accordance with a provision of the policies. On April 10, 1963, Lakewood filed separate suits on all twelve policies in the Common Pleas Court for Cuyahoga County, Ohio. The defendant companies caused eleven of the suits to be removed to the United States District Court for the Northern District of Ohio. The defendant in the twelfth suit is an Ohio corporation and that case was not removed. It is said in briefs that it is still pending in Common Pleas Court.

By appraisal award submitted on September 25, 1964, the umpire and one of the appraisers agreed that Lakewood's business interruption loss resulting from the fire was $152,177.11 plus $30,996.00 in expediting expenses. The total award was $183,173.11.

The eleven separate suits were consolidated in district court and, on the companies' motion, the issue of validity of the appraisal award was tried separately to the court. The court held that the appraisal award of September 24, 1964, was "void and not a bar to the maintenance of these actions by plaintiff." Evidence on the amount of loss was later heard by the district judge and Lakewood's recovery under the policies was fixed at $277,787.00. This is a consolidated appeal by the insurance companies from the district court's judgment.

Lakewood manufactures a variety of machine parts primarily for sale to a few large customers. During the period here involved, the bulk of Lakewood's production consisted of pinsetter parts for its principal customer, the Brunswick Corporation. Parts were also manufactured for Otis Elevator Company and Cadillac Motor Company.

The fire started in the paint room and from there spread to the office, the tool room (used for maintenance and repair of production equipment), and the tool crib (the storage area for daily supplies). Because of the fire damage these facilities were relocated in other parts of the plant. Little damage was done to the actual production area or to machinery, and operations were resumed within forty-eight hours after the fire. But, operations admittedly were hampered during the succeeding three months' period—October through December, 1961—by reason of the fire damage. The effect of the fire on operations after that period is vigorously contested, primarily because on January 9, 1962, a strike occurred at Brunswick which lasted until April 6, 1962. During the course of the strike, shipments to and payments from Brunswick were drastically reduced although Lakewood apparently was not precluded from producing Brunswick parts and adding them to inventory in anticipation of future demands.

* Honorable Henry L. Brooks, then Chief Judge of the United States District Court for the Western District of Kentucky, sat on this case by designation.

The insurance policies provide that, in the event of damage to or destruction of real or personal property by a peril insured against, the insurance company is liable

"[F]or the Actual Loss Sustained by the insured resulting directly from such interruption of business, * * * for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed * * *"

It is stated in the appraisal award:

"The umpire finds that the period from October 3, 1961 to May 2, 1962 was a reasonable time in which to rebuild the building and to move and relocate the machinery and equipment which had to be reconstructed and replaced on account of the fire on October 3, 1961, but must also recognize and find that the strike at Brunswick was the principal cause of the decrease of the sales value of production of Lakewood from January 9, 1962, and that this fact must be taken into consideration in the determination of the actual cash value of the loss sustained by Lakewood."

The appraisal team arrived at the amount of the award by using the potential production and actual profit figures submitted by Lakewood's appraiser for the period from the date of the fire to May 2, 1962. These figures were pro-rated, however, from the date of the fire to January 9, 1962, allowing a net profit rate of ten per cent. The effect of this computation was to terminate the period of business interruption loss on January 9, 1962, the date of the Brunswick strike.

The initial question, and we think the decisive one, is whether the district court erroneously set aside the appraisal award.

■■ Generally, a court will not interfere with an appraisal award but, to the contrary, will indulge in every reasonable presumption to sustain it in the absence of fraud, mistake, or misfeasance. A court will not substitute its judgment for that of the appraisers or set aside an award for inadequacy or excessiveness unless it is so palpably wrong as to indicate corruption or bias on the part of the appraisers. 44 Am.Jur.2d Insurance § 1719 (1969).

■■ The law of Ohio, applicable here, is essentially in line with the general rule. In Ohio fraud or manifest mistake is a proper legal basis upon which to set aside an appraisal award. Baltimore & Ohio RR v. Stankard, 56 Ohio St. 224, 46 N.E. 577 (1897). To constitute manifest mistake, the mistake must be of such character that the arbitrator or appraiser would have corrected it had it been called to his attention; a mistake of judgment is not manifest mistake. Pfleger v. Renner, 13 Ohio App. 96 (1920). See Bates v. Pennsylvania RR, Ohio App., 33 N.E.2d 678, 26 Ohio L.Abst. 144 (App.1937).

The district court's rationale in setting aside the appraisal award is as follows:

"If the actual loss sustained by plaintiff by reason of interruption of business caused by the fire had ended on January 9, 1962, an express finding of that fact should have been made by the umpire, and no determination of a fixed rebuilding period extending beyond that date would have been necessary. By reason of the fact that the only expressed time period found by the umpire was the reasonable rebuilding period, it is the Court's conclusion that the award must be construed as finding a period of business interruption as a result of the fire extending from October 3, 1961 to May 2, 1962, subject to the fact that the strike at Brunswick had to be considered in determining plaintiff's actual loss sustained.

\*    \*    \*    \*    \*    \*

"Had the umpire made a firm finding that the period of interruption caused by the fire ended on January 9, 1962 and that there was no actual loss sustained thereafter, that would

present a question of judgment which would not be subject to review by this Court. The award, as this Court believes it must be properly construed, having adopted the theory that the disruption of the plaintiff's manufacturing facilities as a result of the fire extended to May 2, 1962 and then having failed to consider that fact in arriving at the ultimate conclusion, is subject to being set aside by this Court."

██ This language indicates that, in construing the award, the district court considered only the actual wording, ignoring the rule which required that ambiguity in the award be resolved in light of the testimony of the umpire and the appraiser who signed it. See Aetna Casualty & Surety Co. v. American Surety Co., 64 F.2d 577 (4th Cir. 1933). It seems clear to us that the appraisal team found that the period of business interruption ended on January 9, 1962, and that Lakewood sustained thereafter no actual loss due to the fire.[1] This finding, which is implicit in the written award and explicit in their testimony represents a question of judgment which may not lightly be set aside. The district court expressly recognized the rule but erroneously avoided its application, apparently because the award itself did not contain a "firm finding" to that effect.

Umpire Yoder and appraiser Butler both testified that, in making the award, they considered the reasonable rebuilding period to be from October 3, 1961 to May 2, 1962, but concluded that the actual period of business interruption was from October 3, 1961 to January 9, 1962. The following testimony of umpire Yoder is illustrative:

COURT: If there had been no strike at Brunswick, what would the period of business interruption be? You say here from October 3, 1961 to May 2, 1962. Was that the period of interruption that you found, or was the period of interruption from October 3, 1961 to January 9, 1962?

WITNESS: The business interruption, I would say, was to January 9th.

COURT: That is not what you say in your report, is it?

WITNESS: I think I do, if not directly, then indirectly.

Umpire Yoder also testified that the appraisal award of $183,173.11 represented what he actually intended to award Lakewood as its total loss from the interruption due to the fire.

Appraiser Butler testified in a similar fashion:

"Well, the period of interruption which we finally agreed upon, which was the length of time which would be required with the exercise of due diligence and dispatch to repair or replace the damaged facility was from October 3, * * * to May 2, 1962; but we found an intervening cause which limited the actual loss sustained until January 9, 1962."

The umpire and appraiser based their determination largely on the fact that in the three months immediately after the fire Lakewood produced at a rate well in excess of $300,000 sales value, whereas the sales value of production dropped significantly during the three months of the Brunswick strike, reaching a low of $72,000 in March, 1962; then, in April, the month the strike ended, sales value of production increased to more than $350,000. Moreover, Butler testified that interviews with employees of Lakewood revealed that production operations were practically normal by December, 1961. Lakewood attempted to refute

---

1. The district court recognized that the policy provision providing that the insurer was liable only for such time as would be required with the exercise of due diligence to rebuild, replace or repair the damaged property was a cut-off date for liability, Rogers v. American Ins. Co., 338 F.2d 240 (8th Cir. 1964), and that the length of the actual business interruption caused by the insured peril may be shorter than, equal to, or longer than the maximum period of liability under the insurance policy.

this by arguing that the decreased production during the months of the strike was due to inefficiencies caused by the fire. The appraisal team determined, however, that production was reduced due to the strike and that the fire did not impede production after January 9, 1962.

The district judge made the point that, even if it be assumed that the fire caused no loss of production after January 9, the award failed to consider whether the fire caused the plant to operate with less efficiency and more cost. But, the appraisal team testified they had not overlooked that possibility. The substance of their testimony is that any impediment to production after January 9 would have been insignificant and not measurable.

We conclude that the district judge erred in setting aside the appraisal award. The judgment is reversed and the cause remanded for proceedings consistent with this opinion.