**AMERICAN STORAGE CENTERS, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant.**

**Case No. 5:08 CV 655.**

United States District Court, N.D. Ohio, Eastern Division.

May 14, 2009.

Dimitrios S. Pousoulides, North Canton, OH, for Plaintiff.

D. John Travis, Gary L. Nicholson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER

(Resolving ECF 62)

DAVID D. DOWD, JR., District Judge.

### I. INTRODUCTION

This case involves a dispute over plaintiff American Storage Center's claim for hail damage to fifteen storage buildings made with defendant insurance company. The Court previously granted defendant Safeco Insurance Company of America's (Safeco) motion to compel appraisal, and ordered the procedure by which the appraisal process was to be completed. *See* ECF 27 and 34, respectively.

As is apparent from an examination of the docket in this case, the appraisal process was fraught with delay. More than six months after the Court granted defendant's motion to compel appraisal, plaintiff moved to strike the appraisal process. *See* ECF 62.

The basis for the plaintiff's motion is that the appraisal process has broken down, both as to the procedure for conducting the appraisal directed by the Court and as to the appraisal process provided for by the insurance policy. The insurance policy's appraisal process pro-

vides that if the appraisers for each party do not agree on the amount of loss, their differences are to be submitted to a mutually selected umpire. An appraisal award results when there is agreement as to the loss between any two of the three. The reports provided by the plaintiff in support of its motion to strike indicates that defendant's appraiser, Robert Keenan, valued the loss at $14,186; plaintiff's appraiser, Alex Semegen, valued the loss at $569,399.37; and the mutually selected umpire, Norman Barton, valued the loss at $251,808.79. See ECF 62–2, 62–3, 62–4, and 62–5. Plaintiff also contends that the Court's orders regarding the procedures for the appraisal process were not followed.

Safeco opposed plaintiff's motion to strike, contending that an appraisal award had been reached in accordance with the terms of the insurance policy. See ECF 64. In support, Safeco attached an appraisal award for $251,808.79, apparently signed by defendant's appraiser Keenan and umpire Barton. See ECF 64–2. Barton's signature is undated, but Keenan's signature is dated February 13, 2009, the same date plaintiff's motion to strike was filed. Plaintiff filed a reply. See ECF 70.

The Court referred this matter to Magistrate Judge Pearson to conduct a hearing to determine the facts and circumstances surrounding the appraisal award process before the Court rules on plaintiff's motion to strike. See ECF 66. The parties filed briefs and exhibits in advance of the hearing, which was conducted by Magistrate Judge Pearson on March 31, 2009.[1]

Magistrate Judge Pearson subsequently issued a Report and Recommendation (MJP Report). See ECF 85. Defendant does not object to the facts determined by Magistrate Judge Pearson in the MJP Report, and only objects to the extent the MJP Report makes legal conclusions regarding compliance with the Court's orders regarding the appraisal process. Plaintiff also objected to the MJP Report. See ECF 88. In its objections, plaintiff argues that the facts revealed at the hearing demonstrate non-compliance with the Court's orders, and manipulation, fraud, and corruption of the appraisal process.[2]

## II. APPRAISAL PROCESS

### A. Court's Instructions Regarding Appraisal Process

The Court published a lengthy Order which contained instructions for the conduct of the appraisal process. See ECF 34. In addition, the Court determined that it would address the issues of depreciation and administration of plaintiff's claim after the loss determination was filed in accordance with the Court's instructions. See ECF 48. A consolidated summary of the procedure ordered by the Court for the conduct of the appraisal process follows.

#### 1. Visual Inspection

The two appraisers and the umpire were required to make a visual inspection on a building-by-building basis. Each party was permitted to have the author of its loss estimate present during the visual inspection by the umpire and appraisers.

The umpire was responsible for coordinating the appraisers for the visual inspection. If the appraisers and umpire could not complete the visual inspection in one day, another date was to be mutually selected to continue the visual inspection and

---

1. The transcript of the hearing was filed at ECF 86.

2. Plaintiff's "objections" take the form of an argument that the facts contained in the MJP Report support plaintiff's motion to strike. See ECF 66.

that date reported to the Court. *See* ECF 34, pp. 7–9.

The disputed insurance claim involves fifteen buildings. The determination of the loss by the appraisers was to be made and submitted separately for each building. *See* ECF 34, p. 6.

### 2. *Reasonably Comparable Appearance*

The Court analyzed the Ohio Administrative Code's "reasonably comparable appearance" requirements and the insurance policy's provision regarding "wear and tear," and ruled that any conflict between the "wear and tear" provision of the policy and the "reasonably comparable appearance" standard of Ohio Administrative Code Section 3901–1–54I(1)(b)

> must be resolved in favor of application of the "reasonably comparable appearance" standard, if in fact the item to be replaced has also suffered from "wear and tear". As a consequence, the two appraisers and umpire will be required to make a judgment call, following a visual inspection building by building, siding by siding, as they evaluate the extent to which replacement is required to result in a reasonable comparable appearance. In that context, the fact that the "item" has also suffered from wear and tear will not negate the necessity for replacement where replacement is necessary for a "reasonably comparable appearance."

ECF 34, pp. 5–6.

### 3. *Loss Determination*

In the event that the appraisers' loss calculations do not agree, the Court instructed that the umpire may recommend a different loss amount than either of the appraisers. A loss determination, on a building-by-building basis, agreed to by any two is binding. *See* ECF 34, pp. 5–6.

Upon completion of the process and agreement between any two of the three regarding the loss, "the two appraisers and umpire shall file with the Court" the loss determination upon which the two of them agreed and indicate the amount of loss on a building-by-building analysis. *See* ECF 34, p. 10.

### B. Motion to Strike Appraisal Process

█ Plaintiff's motion requests that the Court strike the appraisal process and move forward with a case management plan and a jury trial. The basis for plaintiff's motion is that defendant's appraiser, Robert Keenan, and the umpire, Norman Barton, did not follow the Court's instructions regarding the conduct of the appraisal process, and that the appraisal process had broken down because the appraisers' and umpire's loss estimates were significantly far apart and there was no agreement between any two.

In response, defendant contends that an appraisal award was issued in accordance with the appraisal process and refers to Keenan's agreement with Barton's loss determination, which was attached to defendant's opposition. Defendant argues that the Court cannot review or set aside the appraisal award in the absence of fraud, mistake, or misfeasance. The agreed upon loss determination between Keenan and Barton attached to defendant's opposition to the motion to strike was not previously filed with the Court.

In its reply, plaintiff asserts that it was not previously aware of an agreed award between Barton and Keenan, and also cites *Edwards v. Transamerica Insurance Group*, 1986 WL 9619 (Ohio App. 10 Dist.), for the proposition that an insured cannot be compelled into appraisal.

## III. ANALYSIS

### A. Report and Recommendation

Neither party objects to the facts contained in the MJP Report based on the hearing conducted by Magistrate Judge Pearson. Defendant's objection states that the facts determined by Magistrate Judge Pearson are "appropriate and grounded in the evidence elicited at the March 31, 2009 hearing." *See* ECF 87. Defendant objects to the MJP Report only so far as the MJP Report contains legal conclusions as to whether there has been compliance or non-compliance with the Court's orders. Plaintiff's objections do not take issue with the facts determined by Magistrate Judge Pearson at the hearing, but rather argues that those facts, and the briefs and exhibits filed in connection with the motion to strike and the hearing, demonstrate manipulation, fraud and corruption of the appraisal process.

The Court has reviewed the MJP Report as to the facts found from the hearing and exhibits thereto and adopts the same.

### B. The Appraisal Process

In this case, the Court interpreted the insurance policy language and Ohio law and established the procedures for arriving at an appraisal award in this case. These procedures were designed to ensure a thorough and expeditious process.

There is no question that the Court's orders regarding the conduct of the appraisal process were not followed in a variety of ways, both great and small. Most importantly for the purposes of plaintiff's motion to strike, the participants failed to follow material aspects of the Court's orders regarding the appraisal process.

1. *Failure to Conduct Visual Inspection and Building–by–Building Analysis*

The first material failure is fundamental. The appraisers and umpire were instruct-ed by the Court to conduct a building-by-building visual inspection and calculate their loss determination on a building-by-building basis. The need for appraisers and umpire to make a visual inspection in order to make an assessment and arrive at a loss determination is obvious, and was expressly recognized by defendant's appraiser.

Defendant's appraiser Keenan testified at the hearing and stated in his appraiser report that he did not inspect the roofs of any of the fifteen buildings. MJP Report, p. 3; Keenan Report, ECF 62–3, p. 2. However, in both his hearing testimony and appraiser report, Keenan stated a visual inspection was necessary for a "proper fact finding by the engaged appraisers." *Id.* In fact, in his appraiser report, Keenan stated that he "hoped that the court will grant a stay on this order and allow the appraisal to be conducted in a manner consistent with proper fact finding by the engaged appraisers, thus allowing [the Court] to make an informed decision." Keenan Report, ECF 62–3, p. 2.

The umpire Barton also did not perform a complete visual inspection as ordered by the Court and identified by Keenan as necessary for a "proper fact finding." Barton testified at the hearing that he inspected only eleven of the fifteen buildings. MJP Report, pp. 3–4. Consequently, over 25% of the buildings were not inspected by the umpire.

Plaintiff's appraiser Semegen did not testify at the hearing, but documentation regarding his appraiser report was provided in connection with the hearing. Semegen stated in his appraiser report that he completed a building-by-building inspection, but indicated in a letter to Keenan and Barton that he relied on engineer reports for roof-top damage assessment. MJP Report, pp. 4–5.

The appraisers and umpire were also directed by the Court to conduct the visual inspection together. As the MJP Report reflects, the Court's orders were also not followed in this regard, although defendant's appraiser Keenan stated that he would have preferred to conduct the inspection in that manner. MJP Report, p. 7.

The Court's Order, ECF 34, required the appraisers and the umpire to conduct a visual inspection of the fifteen buildings which are the subject of plaintiff's insurance claim on a building-by-building basis and to render their loss determinations on that same basis. The Court finds that its orders were not followed.

### 2. *Reasonably Comparable Appearance*

Another material failure to follow the Court's orders directly impacts the loss calculation. The Court analyzed the Ohio Administrative Code's "reasonably comparable appearance" requirements and the insurance policy's provision regarding "wear and tear." The Court then ruled as a matter of law that, to the extent there is a conflict between the regulatory and the policy language, the conflict must be resolved in favor of application of the "reasonably comparable appearance" standard if the item to be replaced has also suffered from "wear and tear." Therefore, when evaluating the extent to which replacement is required to result in a reasonably comparable appearance, the Court instructed the appraisers and umpire that the fact the item also suffered from wear and tear will not negate the necessity for replacement where replacement is necessary to provide for a "reasonably comparable appearance." ECF 34, pp. 5–6. This instruction is material to the loss calculation.

In his report, defendant's appraiser Keenan cited a series of cases and engaged in his own legal analysis regarding the language of the insurance policy. He determined that, with respect to damaged roof shingles, replacement of a single damaged shingle with one of the same color and dimension fulfills the policy requirements [3] and satisfies the "reasonably comparable appearance" issue. Keenan concluded that the cases he cited

> provide a basis for the reasonableness of replacing only damaged parts of the property provided a comparable product is available. In the subject case ... we are able to replace only the damaged shingles with shingled of like kind and quality to those that are undamaged. Having to replace the entire roof or even an entire deck due to fading through weatherization is most unreasonable and should be ruled out by the umpire.

*See* ECF 62–3, pp. 7–9.

Keenan applied the same reasoning to the vinyl siding. His loss calculation is based on his own interpretation of the insurance policy and the law regarding "wear and tear" and "reasonably comparable appearance." Keenan did not apply the Court's legal ruling on this issue when making his loss determination and did not follow the Court's instruction regarding "reasonably comparable experience" when "wear and tear" is also involved.

The Court's Order, ECF 34, interpreted the governing insurance policy and regulations and ruled on the issue of "wear and tear" and "reasonably comparable appearance." The appraisers and umpire were required by the Court to apply that ruling when determining the loss to each building.

---

**3.** In its motion to strike the appraisal process, plaintiff asserts that Keenan's appraiser report refers to a provision in the insurance policy not applicable to this matter. *See* ECF 62, p. 4 of 8.

The Court finds that its orders were not followed. In addition to not following the Court's instructions regarding visual inspection, the Court's orders were also not followed regarding the application of the "reasonably comparable appearance" standard by all participants in the appraisal process.[4] The manner in which the "reasonably comparable appearance" issue is both interpreted and applied makes a material difference in the outcome of the building-by-building loss determinations.

### 3. *Loss Determination*

In order to complete the appraisal award process, agreement by any two of the appraisers and umpire is required on a building-by-building basis. If an agreement was arrived at, the appraisal award was to be filed with the Court. *See* ECF 34.

Defendant's appraiser Keenan apparently ultimately agreed to Barton's loss determination. According to the MJP Report, both deny outside influence in arriving at their loss determinations or agreement.

Despite its efforts to expeditiously conclude the appraisal award process, multiple extensions of time were requested. The last extended the date for completion of the appraisal process was March 2, 2009. *See* ECF 61.

The Court first learned of the agreement between Keenan and Barton regarding the loss determination when defendant filed its opposition to plaintiff's motion to strike the appraisal process on February 27, 2009. *See* ECF 64. However, although the agreement reflected a date on or about February 13, 2009, the appraisers and umpire did not file the loss determination with the Court as required. Two days after the Court ordered a fact finding

hearing into the appraisal award process, and four days after the Court's deadline for completion of the appraisal award process, the Court received a letter from the umpire dated March 6, 2009, notifying the Court of the agreed upon loss determination.

### C. Motion to Strike Appraisal Process

 Plaintiff's motion to strike the appraisal process was based on the failure of the process to result in an appraisal award and failure to follow the Court's instructions regarding the appraisal process. Defendant's opposition attached a previously undisclosed appraisal award that defendant argues should not be set aside in the absence of fraud, mistake, or corruption. Under Ohio law, a court should not generally interfere with an appraisal award absent fraud or manifest mistake. *Lakewood Manufacturing Company v. Home Insurance Company of New York,* 24 Ohio Misc. 244, 422 F.2d 796, 798 (6th Cir.1970); *see also Csuhran v. Merrimack Mutual Fire Insurance Company,* 1994 WL 102248 (Ohio App. 11 Dist.) (fraud, mistake or misfeasance); *Smith v. The Shelby Insurance Group,* 1997 WL 799512 (Ohio App. 11 Dist.) (fraud, mistake or misfeasance).

The Court finds that an appraisal award was not achieved by the appraisal process in this case because the process was not conducted in accordance with the Court's instructions. The Court issued orders which contained clear instructions regarding the process by which an appraisal award was to be achieved. The participants failed to comply with material aspects of those instructions. Specifically, the parties failed to comply with the Court's orders regarding visual inspections

---

4. Plaintiff contends that the umpire Barton also failed to follow the Court's Order regarding the "reasonably comparable appearance" in calculating his loss determination. However, it is not necessary for the Court to analyze that issue in order to rule on plaintiff's motion to strike the appraisal process.

and with the Court's ruling regarding "reasonably comparable appearance." These instructions were material in determining the loss. The loss determinations arrived at by the participants are not valid because they were not arrived at in accordance with the Court's instructions. As a consequence, those loss determinations, which were arrived at contrary to the Court's instructions, cannot form the basis for an appraisal award.

■ Even assuming for the sake of argument that the agreement between Barton and Keenan resulted in an appraisal award, the Court finds it would be set aside. Under Ohio law, fraud and mistake are a proper legal basis for setting aside an appraisal award. *Id.* The mistake must be of such a character that the appraiser would have corrected it had it been called to his attention. *Lakewood Manufacturing Company,* 422 F.2d at 798; *see also Smith,* 1997 WL 799512 at *4 (mistake must be "palpably wrong" to set aside appraisal award).

The Court assumes without deciding for the purpose of this analysis that the participants in the appraisal process intended to comply with the Court's orders, and that their failure to do so was not a deliberate contempt of the Court's orders. Had the participants in the appraisal process been consciously aware that their conduct of the appraisal process was contrary to the Court's orders, they most certainly would have corrected their actions. Accordingly, the Court finds that even if the agreement between Barton and Keenan resulted in an "appraisal award," the award was based on a mistake by the participants because the loss determinations were not arrived at in accordance with the Court's instructions, and is therefore properly set aside. *Id.*

## IV. CONCLUSION

Based on the analysis contained herein, plaintiff's motion to strike the appraisal process is GRANTED. Discovery is open, and shall be concluded by June 30, 2009. Summary judgment motions on the issue of punitive damages may be filed by July 10, 2009, responses by July 20, 2009 and replies by July 27, 2009. This case is scheduled for trial on a standby basis for the two-week period beginning November 2, 2009. A Trial Order will be separately published.

IT IS SO ORDERED.

## *REPORT AND RECOMMENDATION*

BENITA Y. PEARSON, United States Magistrate Judge.

## *REPORT FROM FACT–FINDING HEARING HELD MARCH 31, 2009*

The following report is submitted pursuant to Judge Dowd's Order referring this matter to the undersigned Magistrate Judge to conduct a fact-finding hearing to assist Judge Dowd in ruling on Plaintiff's Motion to Strike the Appraisal Process in the above-captioned matter. *See ECF No. 66.* Judge Dowd's referral specifically asked that Magistrate Judge Pearson "conduct a hearing to determine the timing, facts and circumstances, and other relevant facts, surrounding Robert Keenan's appraisal award attached to plaintiff's motion, the appraisal award apparently signed by Keenan and Barton, which is attached to Safeco's opposition to plaintiff's motion to strike, and Barton's letter to the Court." The Court requested that Magistrate Judge Pearson schedule and conduct the hearing and submit a written report as to her factual findings by April 14, 2009, or earlier. The Court also directed that Robert Keenan and Norman Barton be summoned to testify at the scheduled hearing.

The undersigned conducted a hearing on March 31, 2009. Both parties were pres-

ent and participated.[1] Attorney Dimitrios Pousoulides represented Plaintiff American Storage Centers, Inc. and attorneys John Travis and Gary Nicholson represented Defendant Safeco Insurance Company.[2] Robert Keenan (Defendant Safeco's Appraiser), Norman Barton (Umpire), Ken Moon (independent contractor for Umpire), and Cindy Channel (Employee of Plaintiff) appeared as witnesses. *See ECF No. 79* (Court's Exhibit and Witness List).

In anticipation of the fact-finding hearing, the Court provided the counsel and witnesses with five (5) different versions of appraisal awards (signed, not signed, etc.) that had been provided to the Court throughout the appraisal process. During the hearing, the Court referred questioned witnesses about these exhibits. After the hearing, the Court placed the exhibits on the docket. *See ECF No. 80* (Court's Exhibits 1–5).

The most salient facts elicited during the hearing follow immediately are summarized later in more detail (where relevant).

### A. *Facts Specifically Relating to the Potential Corruption or Manipulation of the Appraisal Process:*

1. Norman Barton, the umpire, testified that there was no outside or inside influences that affected his determination of the appraisal award amount. Barton also testified that, on the morning of the hearing, defense counsel John Travis, met him in the hallway outside of the elevators and asked him if there had been any outside influence involved in the appraisal process. Barton responded that there had not been and that he (Barton) has nothing to hide.

2. Robert Keenan, Defendant's appraiser, testified that throughout the appraisal process, including up to the day of the hearing, no one had spoken with him or said anything to him to encourage him to or insist that he agree with Barton's proposed appraisal award. *See* Safeco Tr. 3 at 31. He also testified that no one, including any attorney, had assisted him in preparing his appraisal report. *See* Safeco Tr. 3 at 47 & 49. Keenan testified that he prepared an appropriate report and still concurs with it as written. Keenan testified that he did not discuss his decision to sign Barton's initial "Appraisal Award" with anyone, including Barton and defense counsel, prior to signing on February 13, 2009. *ECF No. 64–2.* Keenan also testified that, prior to signing Barton's initial appraisal award, he called defense counsel Gary Nicholson to advise Nicholson that he was going to sign but he did not seek Nicholson's permission or agreement before signing. Keenan testified that he called Nicholson before he signed the "corrected appraisal award" because he was concerned about the potential confusion he might cause by having signed two of Barton's awards. He also wanted to alert Nicholson that by signing the "corrected award" he was committing Safeco to paying a higher dollar amount, $251,808.79 (RCV) rather than $167,261.54 (ACV).

3. Alex Semegen, Plaintiff's appraiser, was not present at the hearing.

---

1. In anticipation of the hearing and pursuant to the undersigned's Order, *ECF No. 68*, counsel for each party filed documents confirming his intention to participate in the hearing, in addition to exhibit and witness lists and briefs. *See ECF Nos. 74, 75, 76, 77, 78, & 79.*

2. Attorney Gary Nicholson was present but did not address the Court or witnesses.

4. Gary Nicholson was present but did not testify.

**B. _Facts Relating to Compliance with Judge Dowd's Order, Ecf No. 34, Providing Instructions for the Appraisal Process:_**

1. Keenan testified that he did not ascend the Plaintiff's (15) buildings to inspect the roofs. He testified that if he had inspected the roofs, then it would have taken him approximately two days to conduct a proper inspection. He testified that because he was unable to inspect the roofs due to snow cover, he does not believe the appraisal constituted proper fact finding. He therefore relied on the engineer's report from EFI Global to make his findings.

2. Barton testified that he inspected the roofs and siding of 11 out of 15 buildings. He testified that he inspected the 11 buildings with an independent contractor, Ken Moon, who was hired by Barton's company. He testified that they both inspected these 11 buildings in approximately 3 hours, spending an average of 16 minutes inspecting each building. He testified that he did not find any damage to the any of the 11 roofs he inspected, but relied on the engineer's report from EFI Global to make his findings.

3. Moon concurred with Barton's testimony regarding ascending and inspecting only "10 or 12" roof tops.

**C. _Comparison of Judge Dowd's Instructions to Actions Taken_**

The following Table compares Judge Dowd's instructions, _ECF No. 34_, to the results.

| Compliance with Judge Dowd's Appraisal Process, ECF No. 34 | | | |
|---|---|---|---|
| Judge Dowd's Appraisal Instructions | _Norm Barton_<br>_(Umpire)_ | _Alex Semegen_<br>_(Plaintiff's Appraiser)_ | _Robert Keenan_<br>_(Defendant's Appraiser)_ |
| 1. Selection of Umpire | N/A | Complied See ECF No. 28 | Complied See ECF No. 28 |
| 2. Reasonably Comparable Appearance Standard | Complied See ECF No. 78, Ex. N [3] | Complied See ECF No. 78, Ex. D | Did not Comply See ECF No. 78, Ex. M [4] |
| 3. Building-by-Building and Siding-by-Siding Analysis | Inspected at least 11 of 15 buildings with Ken Moon. See Safeco Tr. 1 at 22 [5] | Complied See ECF No. 78, Ex. D [6] | Complied Testimony from Hearing, See Tr. 3 at 38 |
| 4. Inspection of the roofs | Ascended 11 of 15 roof tops with Ken Moon. See Safeco Tr. 1 at 22 | Did not Ascend See ECF No. 78, Exs. D & G [7] | Did not Ascend Testimony from Hearing, See Safeco Tr. 3 at 38 |
| 5. File Agreed upon Loss Determination of Umpire and One Appraiser | Notified Court on March 6, 2009 (3 weeks after Keenan signed the first appraisal award) See Court's Ex. 5 | Did Not Notify Court | Did Not Notify Court |

3. N.B. Plaintiff's counsel hand delivered an exhibit binder containing Exhibits A—W to the Court at the same time he filed a computer disc, ECF No. 78, with the Clerk's office.

4. Keenan recommended spot repair of each damaged shingle instead of replacing the entire roof. Keenan also cited case law in his report that does not comport with Judge Dowd's Order regarding the reasonably comparable appearance standard.

5. _See also_ Safeco Tr. 3 at 69.

6. The Court is relying on Semegen's statement from his report that he "completed a Building by Building inspection." _See_ EFC No. 78, Ex. D, page 1.

7. Semegen stated in a letter to Keenan and Barton that he (Semegen) relied on EFI Global's and Gene Smithberger's engineer reports for his roof-top damage assessment. _See_ ECF No. 78, Ex. G.

D. *More Extensive Summary of Facts Elicited:*

The witness(es) credited as the source for the information provided below is identified by initials following the statement.

1. *June 8, 2007:* Day of the hail storm that damaged the roofs and siding of buildings owned by American Storage Centers, Inc. Plaintiff's counsel played a video during the hearing, which he obtained from youtube.com that allegedly shows footage of the June 8, 2007 hail storm. *See ECF No. 78, Ex. X.* Defense counsel objected to and questioned the authenticity of the video and that it constitutes an extraneous item that the umpire did not consider in his report.

2. *September 29, 2008:* Judge Dowd issued an Order outlining the appraisal process and procedures to be followed. *See ECF No. 34.*

3. *December 18, 2008:* Both appraisers, Robert Keenan ("RK") and Alex Semegen, and the umpire Norman Barton ("NB") met to inspect the buildings owned by American Storage for damage. Also present were Ken Moon ("KM"), who works with Norm Barton, Defense Counsel Gary Nicholson, and an unnamed engineer were also present. The men were not able to inspect the roofs because of snow cover. All in attendance returned to Barton's offices to discuss how to proceed. Keenan, Semegen, and Barton agreed to make future inspections of the property individually. There was also a short discussion of the difference between the two appraisers' estimate of damages and cost to repair. (witness NB) Both appraisers and Moon returned to the property the same day and looked at the siding on the buildings. (All witnesses concurred with this accounting of the events that took place on December 18, 2008; NB, RK, and KM.)

4. *December 18, 2008:* Moon orally reported to Barton his observations regarding the siding upon return to the site. Moon made no written report of his observations. (KM) Moon reported to Barton that he found no damage to the siding. (NB)

5. *December 30, 2008:* Barton and Moon returned to site and inspected eleven roofs and the siding of eleven buildings out of a total of fifteen buildings. Barton and Moon accomplished this assessment in about 3 hours. Barton and Moon ascended each of the eleven roofs and walked the entire length of each roof, each walking one side of the roof, simultaneously. Barton and Moon then switched sides and walked the entire length of the roof again so both were able to inspect the entire roof (both sides), individually. Barton and Moon found no damage to any of the eleven roofs they inspected. Neither of them returned to the property to inspect the remaining four buildings (roofs and siding). (NB & KM). Barton agreed with Plaintiff's Counsel that he and Moon spent approximately sixteen minutes inspecting each building, which includes the roof and siding. (NB) Barton did not rely on Moon's inspection of the roof and siding to make any conclusions regarding damage. (NB) Barton stated that he brought Moon with him for safety reasons and to increase the speed of the inspection. (NB)

6. *January 9, 2009:* Appraisal report completed by Plaintiff's appraiser

Alex Semegen was issued reflecting cost of repair of $569,399.37. *See* ECF No. 62–2.

7. ***February 7, 2009:*** Appraisal report completed by Defendant's appraiser Robert Keenan was issued. Appraised cost of repair, $14,186. *See* ECF No. 62–3. Keenan testified that he produced an appropriate report and concurs with it as written. He testified that he based his report on EFI Global's report and attached EFI's report to his own. Even though his report calls for 20% overhead and profit, which is a typo, the calculation of the total remains correct. [10% overhead and profit is correctly included.] Keenan testified, in regards to his estimate of $14,000, that he did not think it would be acceptable to Plaintiff, but at the same time, he thought Barton should have accepted his estimate. Keenan testified he did not view or inspect the roofs because they were covered with snow every time he went to the property to inspect them. For this reason, he does not believe the appraisal constituted proper fact finding. Keenan would have preferred to inspect the roofs with Barton and Semegen. Keenan spent 1½ hours at the property on this date in an attempt to inspect the roofs. The owner of the property was there with him. Keenan believes his report should have been accepted by Barton and that his report follows Judge Dowd's Order, ECF No. 34. Keenan added "ten and ten"[8] to his estimate because he thought it would make his estimate more palatable, but he would not agree to additional "ten and ten" to Barton's award. Keenan did not

know, as Plaintiff's Counsel alleged at the hearing, that the case law cited in his report was contrary to Judge Dowd's Order. Keenan denied receiving any assistance from an attorney and testified that no one helped him write his report or provided the case law for the report to him; he compiled the case law on his own. Keenan did not determine the manufacturer of the siding in his report, nor did he investigate the make of the siding. Keenan did not believe he had to investigate the siding manufacturer because it was already fixed and matched. Keenan started writing his report sometime prior to February 7, 2009.(RK)

8. ***February 7–12, 2009:*** Barton received both Semegen's and Keenan's reports sometime in early February. Upon receiving them he noted the difference between Semegen's and Keenan's dollar amount of repair costs. Barton was not surprised at Keenan's reported dollar amount because he, Barton, did not find any damage to the roofs either. He was not aware that Keenan had not inspected the roofs prior to issuing Keenan's appraisal report. (NB)

9. ***February 12, 2009:*** Appraisal report completed by Umpire Barton. Appraised cost of repair, RCV—$251,808.79 and ACV—$167,261.54 was issued. *See.* ECF No. 80–2 (Court's Exhibit 1). Even though Barton found no damage to the roofs, he testified that Judge Dowd had ordered the appraisers to agree on "hail damage." He testified he relied solely on EFI Global's report to reach his conclusions about the roofing and his

---

**8.** When a general contractor is required to oversee a repair job (usually when more than two trades are involved), 10% is added to the estimate for the general contractor's overhead and 10% is added for the general contractor's profit—hence, "ten and ten." *See also* Safeco Tr. 3 at 33.

own inspection of the siding to determine that repair cost. He relied on this report because no other engineer's report contained photos. Barton would disregard any engineer report without photos. Accordingly, he disregarded the 98 photos given to him by Semegen as they relate to engineer reports. Barton mailed the report (presumably overnighted by FedEx) to both appraisers, Semegen and Keenan, when he completed it. The report contained an "Appraisal Award" on page 3 that he signed. Barton may have called Semegen when he completed the report, he is not sure if he did. (NB)

10. *February 13, 2009:* Plaintiff filed the Motion to Strike Appraisal Process. *See ECF No. 62.* Mr. Keenan received a copy of Mr. Barton's report with the appraisal award. Mr. Keenan stated he was surprised at the dollar amount or that he was looking for a "compromise number" because he did not think that the extent of the repairs that Barton proposed were necessary. He expected Barton's award to be a greater amount than his but signed Barton's appraisal award because he felt it would be beneficial to all parties to accept Barton's award. Keenan claims not to have discussed with Barton his decision to sign Barton's award. Keenan did call Gary Nicholson with Gallagher Sharp and advised him of Barton's amount and that he was going to sign Barton's appraisal award. Keenan then signed the award and faxed and mailed it to Barton. Keenan then faxed the signed appraisal award to Gary Nicholson. Keenan stated he did not need anyone's permission to sign the award as it was within his power to do so. (RK)

Mr. Barton received Keenan's email of the signed appraisal award and testi-fied that he was surprised by the signature. He also testified that he did not speak to Keenan regarding the signed appraisal award or Keenan's own estimate of $14,000. Barton testified that he spoke to his wife, Mr. Semegen, and Mr. Moon about Keenan signing the appraisal award. He testified that he called Semegen to tell him that Keenan signed the award and also testified that Semegen stated he was surprised at Keenan's signing. According to Court's Ex. 3, Barton sent an email to Keenan and Semegen about sending them a "corrected estimate" that did not include ACV. (NB)

11. *February 16, 2009:* Barton mails the corrected estimate to Keenan and Semegen that does not include ACV. *See. ECF No. 80–4* (Court's Ex. 3). This exhibit was not signed by Barton, but was signed by Keenan.

12. *February 17 or 18, 2009:* Keenan signed the corrected estimate sent by Barton. He testified he did not discuss signing the corrected estimate with Barton. He did call Gary Nicholson of Gallagher Sharp to make sure there was no problem with him signing this second award. Keenan testified that he called Gary Nicholson about signing the second award sheet because he did want to cause any problems by signing a second appraisal award and wanted to make sure by signing it that it would not create confusion. (RK)

Barton testified that he received this corrected estimate by fax or email at least before the February 27, 2009 letter, which is discussed next. (NB)

13. *February 27, 2009:* Defendant filed its Opposition to Plaintiff's Motion to Strike the Appraisal Process. *See ECF No. 64.* Mr. Barton sent his first letter to Judge Dowd containing

the corrected appraisal award (does not contain ACV). This letter was signed on behalf of Barton by Barton's secretary who had authority to do so. The award sheet was unsigned. Barton could not explain why he did not send the Court a signed copy of the appraisal award or at least inform the Court that Keenan had signed the first appraisal award. Barton testified that he thought he sent a signed appraisal award to Judge Dowd. (NB)

Mr. Keenan testified that he received (*ECF No. 80–5* ) Court's Ex. 4 by email from Barton and responded to him about the same day advising that he, Keenan, would not be amenable to the 10 and 10.(RK)

14. *March 4, 2009:* Judge Dowd Orders a fact-finding hearing to be held before Magistrate Judge Pearson "to determine the timing, facts and circumstances, and other relevant facts, surrounding Robert Keenan's appraisal award attached to plaintiff's motion, the appraisal award apparently signed by Keenan and Barton which is attached to Safeco's opposition to plaintiff's motion to strike, and Barton's letter to the Court". *See ECF No. 66 at 3.*

15. *March 6, 2009:* Mr. Barton sent a second letter to Judge Dowd. *See. ECF No. 80–6* (Court's Ex. 5). This letter contains the corrected appraisal award signed by Keenan and Barton. This is Barton's first notification to the Court of an agreed upon appraisal award.[9] Barton testified that he sent the letter primarily to provide the Court with the corrected version of the appraisal award, *i.e.,* an award reflecting only the RCV. The Court pointed out to Barton during the hearing that the March 6 letter did not provide any new information that was not contained in the February 27 letter that he sent to the Court. *See ECF No. 80–5* Court's Ex. 4. Barton acknowledged this, but could not explain why he sent the second letter to the Court except that he thought the Court already knew of the agreed upon award. Barton testified that he was not aware of an issue regarding the appraisal process until Semegen told him of the motion to strike. Barton also testified that he did not know of the hearing until Plaintiff's counsel sent him an email on March 11, 2009 advising him to appear. Barton testified that there was no outside or inside influence directing him in calculating the appraisal award amount. (NB)

### E. *Barton and Keenan's Non-date Specific Testimony and Testimony Regarding the Court's Exhibits*

1. *Mr. Barton:* Testified that he had no relationship with either party or counsel prior to being retained as umpire. He learned about the case when he received a notice from Mr. Semegen that he had been selected by the appraisers as the umpire. Barton then requested general information from both appraisers. He testified that he had no contact with the attorneys involved in this case and never met them until the date of the fact-finding hearing. He testified that Mr. Travis (defense counsel) met him in the hallway at the elevator and spoke to him for 3 or 4 minutes about the issues for the hearing. Barton said Mr. Travis asked if there was any outside influence and Barton indicated

---

**9.** The Court first learned about an agreed upon appraisal award through Defendant's Opposition to Plaintiff's Motion to Strike. *See ECF No. 64.*

"no" and that I went by the damages and have nothing to hide. Barton prepared an invoice for his services as umpire amounting to $ 5,281.00. ECF No. 78, Ex. W.

Regarding: *Court's Ex. 1* (Plaintiff's **Motion to Strike Appraisal, ECF No. 62–4 (Ex. C): Appraisal Report from Norm Barton (Umpire).):** Barton signed award on February 12, 2009 that he sent to the appraisers for review. *ECF No. 80–2.*

*Court's Ex. 2* (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64–2 (Ex. 1): Appraisal Award signed and dated by Robert Keenan (Defendant's appraiser) and signed but not dated by Norman Barton.): Barton received (via mail or facsimile) this version (with RCV and ACV) that was signed by him and Keenan. Safeco Tr. 2 at 3. Barton does not recall the fax line on the version of Court's Ex. 2 that he received. *ECF No. 80–3.*

*Court's Ex. 3* (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64–9 (Ex. 8): Letter to Messrs. Semegen & Keenan (dated February 16, 2009) from Umpire Barton transmitting the "Corrected" Appraisal Award only signed by Robert Keenan.): Barton sent out this "corrected version (that does not have the ACV) to Keenan and Semegen. It was not signed by him and he cannot explain why. He testified that it is his normal business practice to sign, but did not this time. He received this corrected version back by email or fax from Keenan, which must have been after February 13, 2009. *ECF No. 80–4.*

*Court's Ex. 4* (Judge Dowd's Order referring Case to MJ Pearson, ECF No. 66–2 (Appendix 1): Letter to J. Dowd (dated February 27, 2009) from Umpire Norm Barton with at-tached "corrected Appraisal Award" not signed by anyone.): A letter Barton sent to Judge Dowd containing the corrected award. The letter was also sent to all parties, either this exact letter or a separate transmittal. The appraisal award attached with this letter was unsigned. Barton testified that this was a mistake. *ECF No. 80–5.*

*Court's Ex. 5* (Letter to Judge Dowd dated (March 6, 2009) from Umpire Norm Barton with attached Corrected Appraisal Award signed by Robert Keenan and Norm Barton with neither signature dated. (Not electronically filed by Barton.)): The second letter sent to Judge Dowd that was signed by Keenan and Barton with no ACV. Barton claims he was out of town when this was sent. He testified that he does not know the date he signed it, but it must have been scanned and emailed to him and then he sent it back to the office. *ECF No. 80–6.*

2. *Mr. Keenan:* Testified that the law firm of Gallagher Sharp hired him on behalf of Defendant Safeco. Keenan testified that he communicated with Barton through email or mail and that he has not communicated with Barton since February 27, 2009. Keenan testified that if he would have inspected the roofs, it would have taken it about two days. (This statement is in sharp contrast to the 3 hours Barton and Moon spent inspecting the same roofs.) Keenan testified the he and Mr. Semegen agreed upon Barton as the umpire. Keenan stated he never worked with Barton before this case. Keenan testified that

Regarding: *Court's Ex. 1* (Plaintiff's **Motion to Strike Appraisal, ECF No. 62–4 (Ex. C): Appraisal Report from Norm Barton (Umpire).):**

Keenon acknowledged having received and reviewed this unsigned document. *ECF No. 80–2;* Safeco Tr. 3 at 19 *Court's Ex. 2* (**Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64–2 (Ex. 1): Appraisal Award signed and dated by Robert Keenan (Defendant's appraiser) and signed but not dated by Norman Barton.**): Keenon testified that he decided to sign Barton's award that reflected $251,808 (RCV) and $167,000 (ACV) [despite the vast monetary difference between it and his $14,000 recommendation] because he thought "$161,000 [and $251,000] was a far cry better than 565,000." Safeco Tr. 3 at 24; *ECF No. 80–3.* Before signing, he told Nicholson that he intended to sign, but he did not seek Nicholson's permission to sign. Safeco Tr. 3 at 25. He often works in the evenings and thinks the facsimile time of "19:44" [meaning Keenan sent the fax to Gallagher Sharp at 7:44 p.m.] is "probably right." Safeco Tr. 3 at 26–27.

Court's Ex. 3 (Defendant's Opposition to Plaintiff's Motion to Strike Appraisal, ECF No. 64–9 (Ex. 8): Letter to Messrs. Semegen & Keenan (dated February 16, 2009) from Umpire Barton transmitting the "Corrected" Appraisal Award only signed by Robert Keenan.): Keenan signed this "corrected version (that does not have the ACV) some time after February 13, 2009 (not February 12, 2009 as typed above his signature. Safeco Tr. 3 at 28–29. He is not sure exactly when he signed but testified that he typically attends to matter quickly. Safeco Tr. 3 at 28. Before signing this version of Barton's award—one without the $161,000 ACV amount shown—Keenan called attorney Nicholson and asked if Nicholson had "any problem with him signing." Nicholson had no problem. Safeco Tr. 3 at 29–30. *ECF No. 80–4.*

*Court's Ex. 4* (**Judge Dowd's Order referring Case to MJ Pearson, ECF No. 66–2 (Appendix 1):** Letter to J. Dowd (dated February 27, 2009) from Umpire Norm Barton with attached "corrected Appraisal Award" not signed by anyone.): The undersigned did not question Keenon about this specific version because it was addressed to Judge Dowd. *ECF No. 80–5.*

*Court's Ex. 5* (**Letter to Judge Dowd dated (March 6, 2009) from Umpire Norm Barton with attached Corrected Appraisal Award signed by Robert Keenan and Norm Barton with neither signature dated. (Not electronically filed by Barton).**): Keenon did not know if a version of this exhibit had been sent to his attention. Safeco Tr. 3 at 31. *ECF No. 80–6.*

Date: April 14, 2009.

## OBJECTIONS

■ Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See, United States v. Walters,* 638 F.2d 947 (6th Cir.1981). See, also, *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).