**DIECKMAN, Appellant,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellee.**

[Cite as *Dieckman v. Prudential Prop. & Cas. Ins. Co.* (1993), 87 Ohio App.3d 852.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005531.

Decided Aug. 4, 1993.

*Robert T. Tinl,* for appellant.

*Harold Reader,* for appellee.

QUILLIN, Judge.

Plaintiff-appellant, Barbara Ann Dieckman, appeals from the trial court's order which granted summary judgment in favor of defendant-appellee, Prudential Property and Casualty Insurance Company ("Prudential"). The trial court apparently concluded that the action was commenced beyond the one-year policy limitation. We reverse.

On April 19, 1991, a fire occurred at a house located at 18476 West River Road, Columbia Station, Ohio. Pursuant to a divorce settlement, Dieckman, who did not live in the house, owned a thirty-five percent interest in this property. Dieckman's former husband was suspected of arson.

In late July, Dieckman retained counsel to negotiate a settlement with Prudential, the homeowner's insurance carrier. For the next seven to eight months, Dieckman's attorney and his associate negotiated with Prudential. A Prudential adjuster assured each attorney that Dieckman would be compensated for her interest in the property over and above the mortgage payoff. The adjuster indicated that, although Prudential suspected Dieckman's ex-husband was involved in the arson, Prudential considered Dieckman to be an innocent spouse. Prudential apparently paid off the mortgage, but, despite its representations, denied Dieckman's claim. In a letter dated May 5, 1992, Prudential's attorney indicated that Prudential did not believe that Dieckman was entitled to any payment above the amount of the mortgage payoff.

On August 31, 1992, Dieckman filed this action against Prudential, seeking $35,000 in damages for her interest in the property. Prudential moved for summary judgment, asserting that Dieckman's claim was barred by the following provision in her insurance policy:

"8. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the occurrence causing loss or damage."

Dieckman opposed summary judgment, contending that, through its representations, Prudential had waived its right to assert the one-year limitation.

The trial court, without explanation, initially denied Prudential's motion for summary judgment. However, upon reconsideration, the trial court, again without explanation, vacated its earlier judgment and granted summary judgment in favor of Prudential.

Dieckman appeals and raises one assignment of error:

"The trial court's final judgment was against the manifest weight of the evidence and genuine issues of material fact exist, precluding a grant of summary judgment."

■ No one disputes the validity of the policy's one-year limitation provision, or the fact that Dieckman filed this action after the one-year period had expired. The sole issue before us is whether Dieckman established a genuine issue of material fact as to whether Prudential waived its right to enforce the policy provision in this case.

"An insurance company may be held to have waived a limitation of action clause in a fire insurance policy by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired." *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311, syllabus.

■ Although the *Hounshell* holding is broad, mere negotiation or discussion concerning liability of the insurance company under the policy would not be sufficient action to constitute waiver. See *Broadview S. & L. Co. v. Buckeye Union Ins. Co.* (1982), 70 Ohio St.2d 47, 50, 24 O.O.3d 109, 110, 434 N.E.2d 1092, 1094. Therefore, in *Broadview S. & L.,* the Supreme Court concluded that the mere fact that an insurance adjuster stated that he saw "no problem" with the claim did not evidence an admission of liability where it was evident that the insurance company was only in the process of determining the validity of the claim. *Id.* at 51, 24 O.O.3d at 111, 434 N.E.2d at 1094.

Dieckman relies on *Hounshell,* and contends that Prudential's actions evidenced a recognition of liability which caused Dieckman's delay in filing this action. Dieckman insists that, for several months, Prudential led her to believe that her claim was valid and would be adjusted. It was not until she received the May 5 letter from Prudential's attorney, after the one-year period had expired, that she had any indication her claim was being denied.

According to the affidavit of Dieckman's attorney, Robert Tinl, he sent numerous letters to Prudential over a seven- to eight-month period, attempting to negotiate a settlement. Tinl also stated that he had one telephone conversation with a Prudential adjuster, Teddi Nowak, in August 1991. According to Tinl, Nowak advised him that, although the claim of Dieckman's ex-husband would be denied because of his suspected involvement in the arson, Prudential considered Dieckman an innocent spouse. Nowak further indicated that Dieckman would be compensated for her pro rata share for her interest in the property, after Prudential had determined the market value of the property and the amount of

the first mortgage. Tinl further stated that Nowak assured him that she would review the matter with her superiors, and that she would send information concerning payment in the following weeks.

In September, October and November 1991, Tinl sent several letters to Nowak, requesting information on the status of the settlement of Dieckman's claim. Apparently, Tinl received no response to these letters.

On January 13, 1992, Tinl's associate, Kevin Dunn, had a telephone conversation with Nowak. Dunn stated by way of affidavit that Nowak advised him that Prudential could not determine a settlement amount until it received a proof of loss from the mortgagee. However, Nowak indicated that Prudential would issue a settlement check once the settlement amount was calculated.

In January and February 1992, Tinl sent two follow-up letters to Nowak, requesting information as to the amount of proceeds which Dieckman could expect to receive. In a letter dated March 2, 1992, Nowak indicated that payment would not be issued until a pending bankruptcy issue was clarified. The "payment" to which she referred was specified as a mortgage payoff in the amount of $62,002.071. Nothing in this letter indicated that Prudential would not pay any additional proceeds to Dieckman.

On March 9, 1992, Tinl sent a follow-up letter to Nowak, questioning whether Dieckman was entitled to a percentage of the loss over and above the amount of the mortgage payoff. A letter from Prudential's attorney, dated May 5, 1992, indicated that Prudential did not agree that Dieckman was entitled to any proceeds. By the time this letter was sent, the one-year limitations period had expired.

According to Dieckman's attorneys, Nowak had represented that, although she could not quote an exact dollar figure, Prudential would, in fact, compensate Dieckman for her pro rata share of the fire loss. The attorneys further contend that if Prudential had not made such representations, they would have filed suit within the one-year limitations period.

Reasonable minds could conclude that Prudential's actions evidenced a recognition of liability to Dieckman for proceeds over and above the mortgage payoff, and that such actions caused Dieckman's delay in filing this action. Therefore, summary judgment was not proper. The assignment of error is sustained.

The judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

Cook, P.J., and Reece, J., concur.