ARP, Appellant,

v.

AMERICAN FAMILY INSURANCE COMPANY, Appellee.

[Cite as *Arp v. Am. Family Ins. Co.,* 187 Ohio App.3d 561, 2010-Ohio-2250.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–09–1110.

Decided May 21, 2010.

Stuart F. Cubbon, for appellant.

Michael J. Manahan, for appellee.

HANDWORK, Judge.

{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, which granted a motion for summary judgment filed by appellee, American Family Insurance Company ("American Family"), against the claims of appellant, Kenneth J. Arp. Appellant timely appealed the decision of the trial court and raises the following assignments of error on appeal:

{¶ 2} "1. The trial court erred in granting summary judgment to defendant American Family Insurance on the basis of a contractual one-year period of limitations.

{¶ 3} "2. The trial court erred in determining that claims for the tort of bad faith were rendered moot on the basis of summary judgment on contractual issues."

{¶ 4} In reviewing a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 5} Appellant suffered a house fire on July 20, 2003, and made a claim to American Family, his insurer, for loss of the house and its contents. Jamie Fincher also owned the house and was an insured with American Family; however, she was not living in the house at the time of the fire. In another case, Fincher timely filed suit against American Family and, therefore, is not a party to this appeal.

{¶ 6} On August 4, 2003, appellant received a letter from American Family stating that there was a question concerning coverage, specifically, that the fire may have been an intentional loss arising out of an act committed by or at the direction of an insured and with the intent to cause a loss. Appellant proceeded with his claim by filing a proof-of-loss statement with American Family. This statement, however, did not provide documentation to support his claims and, therefore, was denied. American Family allowed appellant to file a supplemental proof-of-loss statement, which was done in December 2003.

{¶ 7} In a letter dated January 30, 2004, American Family requested appellant to bring to his examination under oath the following abbreviated list of documents[1] and any other documentation that would support appellant's claim: (1) insurance polic(ies), (2) estimates of repair or replacement of the contents, (3) photographs of personal property before or after the loss, (4) receipts or documents that provide evidence of the purchase of the items that are included in the loss, (5) copies of personal income tax returns for the years 2000, 2001, and 2002, (6) copies of monthly bank statements, canceled checks, ledger, or stubs used for recording checks and all working financial records kept for the years 2000, 2001, and 2002, including records for savings, checking, home mortgage, debts or obligations due and owning since 2000, and (7) all financial records for any business of which appellant was an owner. American Family included the

---

1. Other items that were requested, but not applicable to appellant, included evidence of bankruptcy proceedings, other loans, and credit accounts. Additional items regarding employment, such as time cards, W–2s, actual hours worked, and attendance records were not maintained by appellant because he was a self-employed handyman.

following additional paragraph, which was included, in the same or similar terms, in each correspondence generated by American Family:

{¶ 8} "Please be advised that this correspondence, along with any of the investigation by the American Family Insurance Company, does not in any way waive any of the terms and conditions of this policy, and American Family expressly reserves all of its rights and defenses under the policy of insurance and does not waive any compliance with the terms and conditions of the policy."

{¶ 9} Appellant's examination under oath was rescheduled several times and eventually was taken on April 26, 2004. During the examination, appellant testified regarding the events leading up to and during the fire. He also provided his cell-phone records for that time period and pictures of personal property that he claimed was lost in the fire. Appellant testified that he was a handyman and that his heel was crushed on May 22, 2003, when he fell off a roof. After surgery on his heel, he needed crutches for mobility and was not expected to be able to return to work until after January 2004.

{¶ 10} American Family examined appellant regarding his financial situation prior to the fire. Appellant testified that following his injury, he still had some money coming in from earlier jobs and, monthly, he received $243 total in child support for three of his children who lived with him. According to appellant's bank records and utility bills, contained in American Family's claim file, appellant had approximately $450 in his bank account around the time of the fire and appeared to be current with his gas, phone, and electric bills. Appellant was asked to explain prior cases filed against him, which appeared on his credit report. Appellant explained that one suit concerned allegations of damage to property brought by a former landlord, and the others, he presumed, concerned unpaid medical bills. He testified that none of the judgment debtors were pursuing him for payment.

{¶ 11} Appellant explained that a number of personal possessions were stored in the detached garage at the time of the fire because he had removed the items in anticipation of the construction of a dormer, which was never built due to his heel injury. Appellant also explained that the $44,000 increase in house insurance on April 1, 2003, was done to cover the detached garage he had built since purchasing the property in September 1999.[2]

---

2. Despite appellant's testimony, the April 1, 2003 policy reflects that the original amount of coverage for the "dwelling," which was $76,000, was increased to $120,000. Additionally, an endorsement of $50,000 extended coverage for "jewelry, watches and furs, personal property replacement coverage, and other structures" was added to appellant's coverage on April 1, 2003.

{¶ 12} During the examination under oath, counsel for American Family was asked what additional documents were needed to proceed with appellant's claim. Counsel for American Family indicated that he would notify appellant's counsel of any additional documentation required. On June 4, 2004, American Family sent appellant's counsel a letter requesting that appellant provide (1) copies of monthly bank statements for the months of March through August 2003, (2) all utility bills for the months of April through August 2003, (3) evidence regarding the amount of his child-support obligation to Cindy Edwards, (4) evidence that his Aid to Dependent Children ("ADC") benefits were not terminated prior to the loss, and (5) current name, address, and telephone numbers for Rick Bavin, Judy Whitt, and Amy Christi. On June 10, 2004, appellant's counsel responded to American Family's additional request for documentation as follows:

{¶ 13} "I have asked Mr. Arp to provide me with the documents that you requested in your recent faxed letter, but again we are almost a year past the fire and we have provided every single thing that has been requested in a timely fashion. We ask for immediate performance of this contract and note that, in the alternative, we have no choice but to file suit."

{¶ 14} American Family's response on June 16, 2004, notified appellant's counsel that pursuant to the policy, no legal action could be brought against American Family unless there had been full compliance with all the terms of the policy. American Family notified counsel that its June 4, 2004 document request was reasonable and, pursuant to the duties-after-loss section of the policy, appellant must provide those documents in order to be in compliance with the terms of the policy. American Family additionally stated:

{¶ 15} "American Family is requiring strict adherence to the terms and conditions of the policy. Therefore, should suit be filed before your client has produced these documents, it would be my opinion that he has failed to comply with the terms and conditions of the policy. Therefore, he would be unable to bring suit under the terms and conditions of the policy.

{¶ 16} "I expect to receive the responses to our document request shortly.

{¶ 17} "Please be advised that neither this correspondence, nor any other correspondence or conversations that you may have had with my office or American Family are intended to, nor should they be construed by you, as being a waiver of any of the rights, defenses, exclusions and/or limitations that are contained in the policy of insurance. The same are specifically reserved."

{¶ 18} Appellant did not file suit against American Family within one year of the loss. On August 20, 2004, appellant's counsel provided American Family with the information concerning the amount of child-support arrearages appellant owed the state and Cynthia Edwards, and the amount of arrearages he was owed

by Judith Whitt. American Family never denied or accepted appellant's claim of loss. On March 15, 2005, appellant filed suit against American Family. The original case was dismissed and refiled on May 7, 2007.

{¶ 19} American Family moved for summary judgment, asserting that appellant failed to bring suit within the contractual one-year limitations period set forth in the policy. Appellant responded that through its actions, American Family waived or was estopped from applying the contractual limitation. Following oral arguments on the motion for summary judgment, the trial court granted American Family's motion. The trial court held that there was no question that the parties were aware of the contractual one-year limitations period and noted that the issue concerned whether there was full compliance with American Family's requests and whether those requests were reasonable and necessary to make a determination of the validity of the claim. The trial court noted that the validity of the claim was never determined and stated the following:

{¶ 20} "The question is whether the evidence shows that there were acts or declarations by the parties recognizing some hope of adjustment or settlement later on down the road that would have reasonably led the insured, Mr. Arp, to delay in bringing his action under the insurance contract. All reasonable interpretations of the evidence and all inferences are joined—or permitted to be inferred from the evidence which is not in question that there is no material genuine issue of fact that suit wasn't filed within one year, and that there had not been full compliance by the insured, which is required.

{¶ 21} "Further, there is no genuine issue of fact that American Family and its representatives were unreasonable in their request for—and their behaviors in terms of attempting to make a determination of the validity of the claim, and therefore it is the order of this Court that [American Family's] motion for summary judgment is hereby granted, there being no genuine issue of material fact on the issue that the statute of limitations was not met because there had not been full compliance by Mr. Arp and reasonable request by American Family for documents to make a determination on the validity of the claim. The issue of bad faith is moot, and therefore the Court need not render a decision on that issue."

{¶ 22} Appellant argues in his first assignment of error that the trial court erred in granting American Family's motion for summary judgment for three different reasons: (1) construing the evidence in his favor, a jury could reasonably find that the actions of American Family constituted a waiver of its contractual limitations period, (2) the policy, which provided both a one-year limitations period and a provision granting American Family the discretion to allow an insured to file suit, was "an impossible Catch–22 situation"[3] for the

---

3. We interpret this phrase to mean that appellant believes that the two provisions create an unconscionable situation for an insured.

insured, and (3) even if the contractual one-year provision was not waived, it was satisfied by Fincher timely filing suit against American Family.

{¶ 23} Appellant's policy provided for three types of coverage for loss of (1) the dwelling, (2) the contents and personal property, and (3) use of the dwelling. American Family paid for the immediate cost of boarding up the dwelling following the fire and advanced appellant $1,000 for his loss of personal property. Beginning approximately one month following the fire, American Family provided housing for appellant and his children. The policy provided for 12 months of housing; however, American Family provided a total of 16 months, through December 2004, thereby extending housing coverage beyond what was provided for in the policy and beyond the one-year limitations period set forth in the policy. Also, in August 2005, American Family paid $52,768.42 to National City Bank to satisfy the mortgage.

{¶ 24} American Family's policy with appellant states the following:

{¶ 25} "Suit Against Us. We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

{¶ 26} "What You Must Do in Case of Loss. In the event of a loss to property that this insurance may cover, you and any person claiming coverage under this policy must: * * *

{¶ 27} "d. as often as we reasonably require: * * *

{¶ 28} "(2) provide us with records and documents we request and permit us to make copies; and

{¶ 29} "(3) let us record your statements and submit to examinations under oath by any person named by us, while not in the presence of any other insured, and sign the transcript of the statements and examinations; * * *"

{¶ 30} It is well settled that a one-year contractual limitations period for bringing suit pursuant to an insurance contract is lawful and enforceable. *Hounshell v. Am. States Ins. Co.* (Aug. 5, 1981), 67 Ohio St.2d 427, 429–430, 21 O.O.3d 267, 424 N.E.2d 311. However, there may be a waiver of a contractual time limitation provision by the insurance company "by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired." Id. at syllabus.

{¶ 31} In *Hounshell*, the insurance company, Lumbermen's, had extended settlement offers to the insureds during the limitations period, which led the insureds to believe that the company would be liable under the policy for a pro

rata share of the loss that was not covered by the other insurer, American States. After settling with American States, the insureds requested Lumbermen's to pay the difference between American States' settlement offer and the insureds' total demand. After the limitations period had run, Lumbermen's denied that claim. The Ohio Supreme Court held that "where there has been activity by the insurance company which evidences an admission of liability upon the policy, and resulting reliance by the insured thereon and failure to file within the time limitation of the contract, the company is deemed to have waived the limitation." Id. at 432, 21 O.O.3d 267, 424 N.E.2d 311. The court, however, noted that "[w]here there is a specific denial of liability upon the policy, either totally or in part, there would generally be no waiver occasioned by an offer of settlement." Id. at 433, 21 O.O.3d 267, 424 N.E.2d 311. Ultimately, the court found that based upon Lumbermen's admission to a pro rata liability pursuant to the insurance policy, a jury question existed as to whether that admission had occasioned the insureds' reliance and delay in filing an action. Id. at 432, 21 O.O.3d 267, 424 N.E.2d 311.

{¶ 32} Shortly after *Hounshell* was released, the Ohio Supreme Court held that even when the claim has not been denied during the limitations period, where an "adjuster was attempting to gather information for consideration of the claim, and where no settlement offers were made or any assurances made with respect to the likelihood of future settlement offers, there is no basis for an estoppel of the insurance company's right to enforce the suit limitation provision." *Broadview Sav. & Loan Co. v. Buckeye Union Ins. Co.* (May 12, 1982), 70 Ohio St.2d 47, 51, 24 O.O.3d 109, 434 N.E.2d 1092. Despite the holding in Broadview, Ohio appellate courts have found that reasonable minds could differ as to whether the insurance company waived the one-year contractual limitations period by not officially denying the claim or by leading the insured to believe that the claim was still viable after the contractual limitations period had expired. See *Dieckman v. Prudential Property & Cas. Ins. Co.* (1993), 87 Ohio App.3d 852, 623 N.E.2d 240 (adjuster repeatedly assured innocent spouse that she would be compensated for her interest in the property over and above the mortgage payoff and never denied her claims until after the limitations period); and *Rak v. Safeco Ins. Co. of Am.*, 8th Dist. No. 84318, 2004-Ohio-6284, 2004 WL 2676740, ¶ 32 (insurer's representations led insured to believe that his claim would be covered and that insurer was working to resolve his claim, but that his claim would not be paid until conclusion of the police investigation/prosecution of the person responsible for stealing insureds' property).

{¶ 33} In this case, American Family never denied appellant's claim. Rather, American Family continually insisted that additional documentation was reasonably necessary to determine the validity of appellant's claim. Our thor-

ough review of the record, however, reveals that American Family had possession of bank statements and utility bills in its claims file. Nevertheless, throughout the one-year limitations period and even after the examination under oath, American Family continually requested these items. American Family insisted that these documents were necessary for it to determine coverage and that appellant's failure to provide these documents constituted a failure on appellant's part to comply with the policy. Additionally, after appellant's examination under oath, American Family also requested, for the first time, evidence regarding the amount of appellant's child-support obligation to Cindy Edwards, proof that his ADC benefits were not terminated prior to the loss, and the names, addresses, and telephone numbers for Rick Bavin, Judy Whitt, and Amy Christi. Appellant provided information regarding child-support obligations and arrearages after the one-year period had expired; however, American Family still did not make a determination as to whether appellant's claim should be accepted or denied.

{¶ 34} Accordingly, we find that reasonable minds could differ regarding whether (1) the documentation requested by American Family was reasonably necessary for it to make a determination as to coverage, (2) appellant supplied the requested documentation, and (3) American Family had sufficient information in its possession to make a determination as to coverage prior to the exhaustion of the one-year limitations period. We find that American Family cannot simply avoid its duty to determine appellant's right to coverage[4] by ignoring the fact that it has in its possession the documentation requested.

{¶ 35} We recognize that American Family continually asserted that it was not waiving any of its rights pursuant to the insurance contract and had informed appellant that he was suspected of arson. We, however, find that American Family's words and actions are at odds. Therefore, we find that reasonable minds could differ regarding whether paying appellant $1,000 for loss of personal property on the day of the fire, the cost of boarding up the premises, and housing expenses for 16 months was a recognition of liability by American Family, and whether, because of these actions, appellant held out a reasonable hope of adjustment, which caused him not to file suit before the one-year period expired.

{¶ 36} Based upon the foregoing, we find that genuine issues of material fact exist and that reasonable minds could differ regarding whether American Family was entitled to judgment as a matter of law. Appellant's first assignment of error, therefore, is found well taken.

{¶ 37} Appellant argues in his second assignment of error that the trial court erred in determining that his claims for the tort of bad faith were rendered moot

---

4. See Ohio Adm.Code 3901–1–54(G)(1), "[a]n insurer shall within twenty-one days of the receipt of properly executed proof(s) of loss decide whether to accept or deny such claim(s)."

on the basis that summary judgment was granted with respect to the contractual issues. Based on our reversal of the trial court's grant of summary judgment in appellant's first assignment of error, we find appellant's second assignment of error well taken.

{¶ 38} On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision and judgment. American Family is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and cause remanded.

OSOWIK, P.J., and COSME, J., concur.