WHITE, APPELLEE, *v.* THE STANDARD OIL CO., APPELLANT.

(No. 1133—Decided May 15, 1962.)

Messrs. *Mickley, Frericks & Howard,* for appellee.
Mr. *Edwin L. Mitchell,* Mr. *H. Vincent Mitchell* and Messrs. *McAffee, Hanning, Newcomer & Hazlett,* for appellant.

GUERNSEY, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court entered pursuant to a jury verdict in favor of the plaintiff, appellee herein. The plaintiff's action was for damages for injuries alleged to have been caused by a fall when the heel of her shoe caught in a crack of two inches, or a fraction less, in width between the rear edge of the top step of a flight of three stone steps and the front edge of a slab of a flagstone sidewalk leading to the building in which were housed certain offices of the defendant, appellant herein. The steps, the sidewalk and the building were all located on premises leased and solely occupied by the defendant. Plaintiff was on these premises to pay a bill owed to defendant.

There was no allegation or proof of special damages, the allegations and proof being directed to damages for pain and suffering and for permanent injuries, and the verdict of the jury was in the exact amount of the prayer for damages. There was no evidence offered by the plaintiff, nor is there any in the record, either of the plaintiff's age or of her life expectancy. The plaintiff rested at the end of her evidence, and the defendant rested without offering any evidence. At the opening of the plaintiff's rebuttal argument to the jury, counsel for the plaintiff made the following statement:

"Ladies and gentlemen of the jury, to raise the question as to you being farmers, property owners, and whether because of a root of a tree under a walk raised the walk, and whether you would think you were negligent and whether you had a duty to take care of it—I wonder how many of you who are property owners carry property liability insurance just for that reason."

The defendant immediately moved for a mistrial, and the trial court overruled the motion and admonished the jury to disregard counsel's statement and "in no way whatever, take the statement into consideration in this case."

After judgment, the defendant moved for a new trial, and subsequent to the overruling of that motion perfected its appeal to this court. After the appeal was perfected the trial court filed a "ruling on motion for new trial," purporting to sustain the same and reciting that "a journal entry may be drawn accordingly." No journal entry has ever been filed sustaining the motion for a new trial, but the trial court thereafter filed an entry

striking from the file the "ruling granting motion for new trial." No appeal has been perfected from this latter order.

Defendant assigns as error the following which we will consider in the same order:

"1. Plaintiff's evidence failed as a matter of law to establish such a substantial defect in defendant's sidewalk as would allow reasonable minds to agree that defendant failed to exercise reasonable care for plaintiff's safety.

"2. The trial court erred to defendant's prejudice in striking its ruling granting defendant a new trial.

"3. Plaintiff's counsel improperly and prejudicially referred to 'public liability insurance' in his final argument.

"4. Plaintiff failed to produce sufficient evidence upon which reasonable minds could conclude that plaintiff's fall on defendant's premises was the proximate cause of the permanent injuries of which plaintiff complains.

"5. The trial court erred in the admission of evidence."

The gist of the defendant's argument relating to its first assignment of error is that under the case law of Ohio the standard of care owed by the defendant to the plaintiff is the same standard owed by a municipality to a member of the public using its sidewalks, *i.e.*, that there is no distinction between the liability of the defendant for sidewalk defects and that of a municipal corporation; and that since the Supreme Court of Ohio has held in numerous cases involving municipalities, with respect to sidewalk defects at least as substantial as the one herein involved, that as a matter of law the municipality was not negligent and was entitled to a directed verdict, then by analogy, the defendant here was likewise not negligent as a matter of law and was entitled to a directed verdict on its motion made at the close of all the evidence. In support of this claim the defendant relies on the case of *Taylor* v. *City of Cincinnati*, 143 Ohio St., 426, wherein, in the fifth paragraph of the syllabus, it was held:

"The duty resting upon municipal corporations, under Section 3714, General Code [now Section 723.01, Revised Code], to keep their streets and other public ways open, in repair and free from nuisance, *requires only reasonable care and vigilance*, in view of all the surroundings, *to keep such streets and ways in a reasonably safe condition for travel in the usual and ordin-*

*ary modes*, and does not exact that which is unreasonable or impracticable. Municipal corporations are not insurers of the safety of their public ways, and are liable only *for negligence in creating a faulty condition in such ways, or in failing to repair, remove or guard against defects or obstructions therein, after actual or constructive notice of their existence.* The standard of care required to be exercised by municipal authorities *in keeping streets in repair and free from nuisance is that care which persons of reasonable and ordinary prudence exercise under like circumstances and conditions.* \* \* \*'' (Emphasis added.)

We do not think that it necesarily follows from this decision that the liability of the defendant herein is governed by the same rule applicable to a municipality. It must be remembered that municipal liability is purely statutory; that, except for a statute there would be no liability; and that in construing a statute the court must determine the legislative intent. As stated in the fourth paragraph of the syllabus in the *Taylor case*:

''Section 3714, General Code, requiring a municipality to keep its streets open, in repair and free from nuisance, does not enjoin upon municipalities a specific legal requirement, but provides a general rule of conduct and makes negligence the basis of liability for its violation, unless an absolute nuisance is proven to exist.''

It is obvious, therefore, that the *Taylor case* is one of statutory construction. We observe also that there is an element of statutory construction, as well as a recognition of matters of hardship and public policy, running through the cases wherein it has been determined that a municipality has not been negligent, as a matter of law, with respect to a ''slight'' defect in its streets or sidewalks. We cite as an example the following from the opinion of Judge Middleton, concurred in by all the other members of the Supreme Court, in the case of *Kimball* v. *City of Cincinnati*, 160 Ohio St., 370, at page 373:

''If, as previously held by this court, the city is not an insurer of the safety of sidewalks, there must be some variation in height of sections of sidewalks because of which, as a matter of law, the city can not be charged with negligence. If this is not true, the statement that the city is not an insurer is practically

meaningless. That variation in height of sections of sidewalk is a condition existing in practically all parts of every city is universally known. In that connection *we quote with approval* the following statement contained in the opinion of Hiscock, J., in *Gastel* v. *City of New York*, 194 N. Y., 15, 86 N. E., 833, 128 Am. St. Rep., 540 (In that case the variation in height was from three-eighths to one and three-fourths inches):

" 'We think we may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs, or pavements. As the result of various causes, climatic and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties, and *it would require a vast expenditure of money to remove them all.* The recent tendency of the law *as evidenced by legislative enactment* has been in the direction of making less rather than more stringent *the rules of municipal liability* in such cases, and, directing our considerations to the precise facts here presented, we think that we should be disregarding those principles of liability *which are justified by reason and public policy* if we should permit a recovery.' " (Emphasis added.)

On the other hand, the defendant's liability herein is governed by the common law, without reference to any statute. The plaintiff was a business invitee of the defendant. The legal responsibility owed to the plaintiff is set forth in paragraph three of the syllabus in the case of *Englehardt* v. *Philipps*, 136 Ohio St., 73:

"An owner or occupier of lands is liable in damages to those who, using due care for their own safety, come thereon at his invitation or inducement, expressly or impliedly given, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, which is known to him but not to them, and which he has negligently suffered to exist."

Thus, by considering the *Englehardt* and *Taylor cases* alone, it might appear that a private occupier of premises and a municipality would both be held liable for negligently failing to correct an unsafe condition in their respective premises known to them. The effect of the cases with respect to munici-

palities, wherein they are held not negligent as a matter of law, is to require that before a municipality may be held liable the defect in its premises must not only constitute an unsafe condition but also must be of substantial nature. Defendant would have us believe that in the case of *Anaple* v. *Standard Oil Co.*, 162 Ohio St., 537, the Supreme Court extended the "substantial nature" doctrine to owners or occupiers of private premises respecting their duty to their business invitees. However, the *Anaple case* does not mention "substantial nature" and appears instead, as far as the nature of the defect is concerned, to turn on the following language, at page 541:

"Whether the duty of ordinary care, which the occupier of premises owes to one of his business invitees, requires such occupier to prevent, remove, or warn against a particular hazard will necessarily depend on factors such as *the potential hazard involved, the opportunity which such an invitee apparently would or would not have to avoid that potential hazard by the exercise of ordinary care, and the practicability of preventing, removing or warning against such hazard.* See *Schwer, Admx.*, v. *New York, Chicago & St. Louis Rd. Co.*, 161 Ohio St., 15, 22, 23, 117 N.E. (2d), 696, and cases cited therein." (Emphasis added.)

However, this is essentially another way of stating that "the test or standard of negligence is the exercise of ordinary or reasonable care, or the conduct of ordinarily or reasonably prudent persons in like circumstances." 65 Corpus Juris Secundum, 310, Negligence, Section 1. With respect to this more or less universal common-law standard of care, it is obvious that the conduct of reasonably prudent municipalities with relation to defects in and the use by the general public of their public ways will normally differ from the conduct of a reasonably prudent businessman with relation to defects in and the use by his business invitees of his business premises.

It is not apparent from the *Taylor case* that a municipality has any duty to discover the condition which causes injury or that a member of the public using the public ways is not required to be on the alert for defects. Although we have not found that the Supreme Court of Ohio has specifically adopted the common-law rules of negligence with relation to business invitees included in the Restatement of Torts, we have not

found any Supreme Court decisions inconsistent therewith, or which preclude their application. We consider the following comments in 2 Restatement of the Law of Torts, 939, 942, Section 343, particularly pertinent:

"a. *Distinction between possessor's duty to gratuitous licensee and duty to business visitor.* There is only one particular in which one who holds his land open for the reception of business visitors is under a greater duty in respect to its physical condition than a possessor who holds his land open to the visits of a gratuitous licensee. The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. * * * Such a visitor is entitled to expect that the possessor will take reasonble care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. * * *"

"* * *

"d. *What business visitor entitled to expect.* A business visitor is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore, a business visitor is not required to be on the alert to discover defects which, if he were a bare licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one of which the possessor should believe that his visitor would not discover and as to which, therefore, he must use reasonable care to warn the visitor."

See, also, *Campbell* v. *Hughes Provision Co.*, 87 Ohio App., 161, affirmed, 153 Ohio St., 9, and *Crampton* v. *Kroger Co.*, 108 Ohio App., 476.

We conclude, with respect to this first assignment of error which we find without merit, that, either by the force of statutory construction or by the application of the rules of common-law negligence, the liability of a municipality for injuries due to

defects existing in its public ways is not the same as the liability of a businessman to his business invitee for injuries due to defects existing on the business premises; that this court and the trial court have no authority, on the facts of this case, to determine that the defendant was not negligent as a matter of law; and that the motion for a directed verdict was in this respect properly overruled.

Without reference to whether the trial court committed error in striking its *ruling* granting defendant a new trial, and without reference to whether the order striking same would be a final, appealable order, suffice it say that the order was entered after this appeal was perfected. No appeal was perfected therefrom, and this court will not, for this latter reason, further consider the second assignment of error.

The defendant's third assignment of error has reference, of course, to the impropriety of injecting in any negligence case, where the matter is not properly at issue, any question, statement, comment, etc., either directly or by implication tending to show that the defendant is insured against liability for the injuries for which damages are sought to be recovered. It cannot be gainsaid that a trial lawyer is treading on dangerous ground and always approaches grounds for a mistrial by the mere mention of insurance when same is not at issue.

However, in the context in which the statement in argument was here made, it neither directly nor by implication tended to show that the defendant carried liability insurance, but was directed instead toward the proposition that the jurors would consider that as reasonably prudent persons they owed such a duty to keep their own premises free from defects that they would insure themselves against liability for their own negligence. This did not indicate that the defendant had done or should have done likewise. It is commonly known that many large corporations are self-insurers and that it is not financially prudent for them to pay the premiums required for and to carry liability insurance. It cannot reasonably be denied that, in Ohio, every juror would have some knowledge that the defendant is a large corporation, and therefore as strongly infer that the defendant was not insured.

Under these circumstances, and in view of the trial court's

prompt and specific admonition to the jury to disregard the statement and "in no way whatever, take the statement into consideration in this case," it is our opinion that no error prejudicial to the defendant was committed as claimed in the third assignment of error.

The defendant's fourth assignment of error is based on the propositions that the evidence merely tended to prove (1) a possibility of a causal relationship between the fall and the injuries of which the plaintiff complains, (2) a possibility of permanent injury, and (3) that by reason of the failure of proof of causation and permanence the damages are excessive.

The only medical testimony as to causation was that of the plaintiff's *attending* physician, and defendant takes the view that the only evidence as to causation was the following question and answer:

"Q. Now doctor, assuming that the plaintiff on the 10th day of January, 1958, while ascending a stairway caught her heel in a gap between the top stone of the staircase and the adjacent flagstone walkway, causing the heel of her shoe to become caught in the gap between the top step and the flagstone, causing the strap of her shoe to be broken, and causing her to be thrown backward upon the stone retaining wall, do you have an opinion as to whether or not such a fall *could* resolve in an injury known as traumatic neuritis? Do you have such an opinion as to whether or not such a fall *could* result in traumatic neuritis?

"A. It is my opinion that the fall of that nature *could* be a causative act which would produce a traumatic type of neuritis." (Emphasis added.)

It is basic to the law of negligence that a jury's determination of causation of an injury must be of probabilities and not of possibilities, and that when objected to, testimony as to mere possibilities is incompetent. *Pfister* v. *Industrial Commission*, 139 Ohio St., 399, and *Brandt* v. *Mansfield Rapid Transit, Inc.*, 153 Ohio St., 429. Here, however, the defendant neither objected to the question, nor did it request that the answer be stricken. Indeed, there was no objection to any part of the testimony of the attending physician. It might appear that had the defendant objected to the question, or to the answer, the same would be considered incompetent by reason of the repeated use of the

word "could," which word was determined in the *Brandt case* to relate merely to possibility rather than probability. However, a closer analysis of the answer shows that the physician used the word, "could," in only a limited sense. He did not say that the fall "could" produce traumatic neuritis, but said that the fall could be an act which *would* produce traumatic neuritis, *i.e.*, that there is more than a possibility that the injury resulted from the fall. His answer left open the possibility that there could be other acts which would produce traumatic neuritis, but was positive testimony to the effect that the fall described in the hypothetical question *would* produce the injury of which the plaintiff complained.

His other testimony as attending physician as to the history of the plaintiff's case, including her complaints, hospitalization and treatment, also bore on the question of probability of causation. Although there was testimony of other aspects of the plaintiff's physical condition which the defendant would claim *possibly* produced pain in the lower back, the physician's testimony effectively excluded these aspects as *probably* causing the plaintiff's complaints. The questions and answers on cross-examination dealing with possible causes of "low back pain" only had little, if any, probabtive value as to the probable cause of "a definite neuritis involving the right sacroiliac region *and involving the nerve trunk in the right leg.*" (Emphasis added.) Under these circumstances we believe there was sufficient evidence as to probability of causation for the question of causation to go to the jury.

As there was sufficient evidence to go to the jury on the question of causation there was a foundation on which damages could be awarded for past pain and suffering and for temporary injury, but the remaining questions raised by the defendant's fourth assignment of error, both as to the excessiveness of the verdict and as to whether damages could be awarded for future pain and suffering and permanent injury, rise or fall together.

The only expert testimony as to the future duration and permanency of the injury was solely the testimony of the attending physician, as follows:

"Q. What can you say as to the permanency of this injury?

"A. Well in my opinion since we have had a very definite and acute recurrence of this same type of neuritis, it would have to be my opinion that the possibility and the potentiality of permanent injury has to be faced because of the fact that we have had this recurrence."

The word, "potentiality," is defined as meaning possibility, so this testimony has no probative value to show that the plaintiff's injury is permanent, or that her pain and suffering will last for any determinate period into the future. Moreover, although it is stated in the defendant's brief that the plaintiff was 54 years of age at the time of trial, we have fine-toothed the record and cannot find that the jury had any evidence before it as to the plaintiff's age or as to her life expectancy. Even had the jury known her age, without evidence as to life expectancy it could not have known the probable duration of a permanent injury or of pain and suffering therefrom. On this state of the evidence, we are of the opinion that the jury was left to speculate as to whether the injury and pain and suffering had any permanence, or would extend into the future at all, and, if so, as to the length of time over which it would extend. There being no allegation or proof of any special damages, the verdict of the jury has to stand, if at all, on the elements of damage arising as a natural consequence from the injury alleged. The verdict being for the total amount prayed for, and there being only speculative proof as to anything except temporary injury and past pain and suffering it necessarily follows that the verdict is excessive and that the trial court committed error prejudicial to the defendant in permitting the case to go to the jury on any of those elements of damages which rest on mere speculation. As we have no measuring stick by which we can order a remittitur of the excessive part of the verdict we must remand the cause for new trial.

As to the defendant's fifth assignment of error, we have carefully examined the bill of exceptions and find that the evidence of which the defendant complains was admitted without objection from the defendant and that the assignment of error is not, therefore, well taken.

For the prejudicial error heretofore found and determined, the judgment of the trial court is reversed and the cause is re-

224

manded thereto for new trial and further proceedings as provided by law.

*Judgment reversed.*

MIDDLETON and YOUNGER, JJ., concur.