[Cite as *Brummitt v. Seeholzer*, 2019-Ohio-1555.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Bobby Brummitt, et al.

      Appellee/Cross-Appellant

v.

Dylan Seeholzer, et al.

      Defendants

[Ohio Mutual Insurance
Group—Appellant/Cross-Appellee]

Court of Appeals No.   E-16-020
                             E-18-029

Trial Court No. 2011-CV-0626

**<u>DECISION AND JUDGMENT</u>**

Decided:  April 26, 2019

* * * * *

Florence J. Murray, Dennis E. Murray, Sr., and Joseph A. Galea,
for appellee/cross-appellant.

Craig G. Pelini, for appellant/cross-appellee, Ohio Mutual Insurance Group.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is a consolidated appeal and cross-appeal of the judgments of the Erie

County Court of Common Pleas following a jury trial on appellee/cross-appellant's,

Bobby Brummit ("appellee"), insurance bad faith claim. For the reasons that follow, we reverse, in part, and affirm, in part, the judgments of the trial court.

## I. Facts and Procedural Background

{¶ 2} On September 25, 2010, appellee, his wife, his brother, and his sister-in-law, were involved in a serious automobile accident when their car was struck by a car driven by Dylan Seeholzer, after Seeholzer failed to stop at a stop sign. Appellee and his wife both suffered serious injuries that required a lengthy stay in a hospital and a rehabilitation facility.

{¶ 3} Seeholzer, then seventeen years old, carried only a $50,000 liability insurance policy, and was otherwise without financial assets. Appellee and his wife were insured through appellant/cross-appellee, Ohio Mutual Insurance Group ("appellant"), and carried an uninsured/underinsured motorist policy with a $500,000 limit.

{¶ 4} After the accident, unsatisfied with appellant's performance in examining and paying his claim, appellee hired a lawyer in late 2010. On September 7, 2011, appellee initiated the present matter by filing a complaint in the Erie County Court of Common Pleas against Seeholzer and appellant. Appellee's complaint was later amended to include a specific claim of bad faith on the part of appellant.

{¶ 5} On February 28, 2012, on the motion of appellant, the trial court bifurcated appellee's negligence claim, in which he sought damages arising out of injuries from the accident, from his bad faith claim. Trial on the underlying negligence claim began on April 16, 2013. On April 24, 2013, the jury returned verdicts in favor of appellee and the

2.

estate of his wife,[1] and against appellant and Seeholzer. The trial court's May 1, 2013 judgment entry awarded $197,055.98 to appellee, and $119,052.84 to the estate of appellee's wife.

{¶ 6} The estate of appellee's wife then filed a motion for a new trial or, in the alternative, for additur, which the trial court denied on May 29, 2013.

{¶ 7} Appellee and the estate of his wife then appealed the trial court's May 1, 2013, and May 29, 2013 judgment entries. In their appeal, appellee and the estate assigned as error the trial court's denial of the motion for new trial, the trial court's decision to bifurcate the negligence claim from the bad faith claim, and several other procedural matters affecting their ability to timely prosecute the bad faith claim. This court affirmed the trial court's judgments on January 9, 2015, in *Brummitt v. Seeholzer*, 6th Dist. Erie No. E-13-035, 2015-Ohio-71.

{¶ 8} Trial was then scheduled to commence on appellee's claim of bad faith on January 19, 2016. On December 30, 2015, appellee moved to file a second amended complaint to include appellant's conduct over the course of the litigation, and to add a specific prayer for relief for punitive damages. The trial court granted the motion on January 15, 2016.

{¶ 9} A jury trial began on January 19, 2016, and continued for eight days over the course of two weeks. On February 2, 2016, the jury returned its verdict in favor of appellee, awarding him $352,277.36. The matter then continued to a punitive damages

---

[1] Prior to the commencement of litigation, appellee's wife passed away from causes unrelated to the accident.

3.

phase on February 3, 2016, following which the jury again found in favor of appellee, and awarded him $250,000 in punitive damages and an undetermined amount of attorney fees. The trial court entered judgment on those verdicts on February 8, 2016. On February 29, 2016, appellant paid $352,277.36 to appellee to satisfy the judgment on the bad faith claim.

{¶ 10} Thereafter, appellant initiated the present appeal when it filed its notice of appeal of the trial court's February 8, 2016 judgment as it pertained to punitive damages. On January 6, 2017, this court remanded the matter to the trial court for a determination of attorney fees for the prosecution of appellee's bad faith claim.

{¶ 11} The trial court held a hearing on the issue of attorney fees on February 1, 2017. On May 5, 2017, the trial court entered its judgment awarding $100,000 in attorney fees to appellee. Thereafter, appellee filed a notice of cross-appeal from the trial court's May 5, 2017 judgment, contesting the amount of the attorney fee award.

{¶ 12} Finally, on May 23, 2017, a hearing was held before a magistrate on the issue of pre-judgment interest on the $352,277.36 verdict for the bad faith claim. Following the hearing, the magistrate entered its decision denying any pre-judgment interest. Appellee then filed objections to the magistrate's decision. On May 7, 2018, the trial court entered its amended judgment entry overturning the magistrate's decision, and awarding $33,586.99 in pre-judgment interest to appellee. Appellant timely filed a notice of appeal from the trial court's May 7, 2018 judgment, which we consolidated with the other appeal and cross-appeal.

4.

## II. Assignments of Error

{¶ 13} In the consolidated appeal, appellant now presents nine assignments of error for our review:

1. The trial court erred by granting Plaintiff-Appellee's second Motion to Amend the Complaint to add a claim for punitive damages four days before trial.

2. The trial court erred and abused its discretion by allowing Plaintiff-Appellee's expert to provide a supplemental expert report three days before trial.

3. The trial court erred when it denied Defendant-Appellant's Motion in Limine to exclude expert testimony regarding alleged violations of the Unfair Claims Settlement Practices Act and allowed such testimony to be presented at trial and included the violations in the jury instructions.

4. The trial court erred in permitting Plaintiff-Appellee to pursue a claim for attorneys' fees in a breach of contract claim.

5. The trial court erred by misstating facts to the jury regarding Plaintiff-Appellee's involvement in a prior appeal.

6. The trial court erred in denying Defendant-Appellant's Motion for a Mistrial following counsel for Plaintiff-Appellee violating the court's "cold-shoulder" rule in offering condolences to a juror during closing arguments.

7. The trial court erred in denying OMIG's motion for a mistrial following testimony of settlement negotiations.

8. The trial court erred in denying Defendant-Appellant's Motion for a Mistrial after counsel for Plaintiff-Appellee testified to the existence of insurance.

9. The trial court erred in its May 7, 2018 judgment in reversing the Magistrate's Decision and awarding pre-judgment interest.

{¶ 14} Appellee, in his cross-appeal, presents two assignments of error:

1. The trial court erred by failing to calculate the lodestar amount and in failing to consider the factors set forth by *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143 and Prof.Cond.R. 1.5 in awarding the Plaintiff $100,000 in attorney fees, an amount significantly below the established lodestar amount, subsequent to the jury's award of fees in the punitive phase of the bad faith trial.

2. The trial court erred by failing to allow the Plaintiff to introduce his expert's testimony as to the reasonableness of the fee award sought by the Plaintiff, and by failing to consider or obtain any expert testimony on the issue of reasonable hourly rates of attorneys in the relevant locality.

### III. Analysis

{¶ 15} At the outset, appellee argues that appellant's fourth, fifth, sixth, and seventh assignments of error are moot because appellant voluntarily satisfied the judgment on the verdict rendered in the trial from which the assignments of error

6.

originate. We note that the same holds true for appellant's third assignment of error. In support, appellee cites the well-established principle of law that a voluntary satisfaction of judgment renders an appeal from that judgment moot. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990). Appellant, on the other hand, argues that the proposed errors had significant ramifications on the jury and its view of appellant, and undoubtedly affected the subsequent award of punitive damages.

{¶ 16} In *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023 (4th Dist.), cited by appellee, the Fourth District encountered a similar scenario. In that case, Shumaker sued Hamilton Chevrolet for an alleged breach of the Ohio Consumer Sales Practices Act ("CSPA"). After a bench trial, the trial court found that Hamilton Chevrolet had in fact breached the CSPA, and ordered Hamilton Chevrolet to rescind the contract. The trial court further awarded attorney fees to Shumaker in the amount of $14,250.00. Thereafter, Shumaker appealed the amount of the attorney fee award. In addition to rescinding the contract, Hamilton Chevrolet then cross-appealed the trial court's judgment, challenging the trial court's findings that Shumaker was entitled to a rescission of the contract or to attorney fees in any amount. *Id.* at ¶ 1.

{¶ 17} On appeal, Shumaker argued that Hamilton Chevrolet's cross-appeal was moot because it had voluntarily satisfied the judgment by rescinding the contract. *Id.* at ¶ 13. The Fourth District agreed to the extent that Hamilton Chevrolet's cross-appeal sought a reversal of the trial court's rescission order. *Id.* at ¶ 15. However, the Fourth District held that Hamilton Chevrolet's appeal was not moot to the extent that it

7.

challenged the trial court's decision to award attorney fees. *Id.* at ¶ 16. Under the CSPA, in order to award attorney fees the trial court first must have found that Hamilton Chevrolet knowingly committed an act or practice that violated the CSPA and that no defenses asserted by Hamilton Chevrolet applied. Thus, because Hamilton Chevrolet's assignments of error challenged whether (1) it violated the CSPA; (2) it knowingly committed an act or practice that violated the CSPA; and (3) the bona fide error defense did not apply, the Fourth District held that the assignments of error were not moot, and proceeded to examine them. *Id.*

{¶ 18} Here, in order to be entitled to punitive damages, appellee must first demonstrate that appellant breached its duty of good faith. *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557-558, 644 N.E.2d 397 (1994) ("Punitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer."). Therefore, with the exception of appellant's fourth assignment of error, which we will discuss later, we hold that because appellant's assignments of error all pertain to issues that impacted the jury's verdict that appellant acted in bad faith, the assignments of error are not moot.

### A. Motion to Amend the Complaint

{¶ 19} Turning now to the merits of appellant's appeal, in its first assignment of error, appellant argues that the trial court erred in allowing appellee to amend his complaint shortly before the bad faith trial to add a claim for punitive damages. We review a trial court's decision to grant or deny a motion to amend the complaint for an

8.

abuse of discretion.  *Shefkiu v. Worthington Indus.*, 2014-Ohio-2970, 15 N.E.3d 394, ¶ 15 (6th Dist.).  An abuse of discretion connotes that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} Appellant contends that through the amendment, appellee set forth an entirely new cause of action on the eve of trial, which prejudiced appellant by preventing it from preparing a defense to the claim.  However, as argued by appellee, a claim for punitive damages is not a new cause of action.  *See Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 13, quoting *Bishop v. Grdina*, 20 Ohio St.3d 26, 28, 485 N.E.2d 704 (1985) ("Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future.  No civil cause of action in this state may be maintained simply for punitive damages.")

{¶ 21} Here, in granting appellee's motion to amend his complaint, the trial court properly recognized the principle that a claim for punitive damages is a claim for a specific category of damages, not a different theory.  Furthermore, the trial court found that appellant was not prejudiced by the inclusion of the claim for punitive damages, stating that it "fail[ed] to see what additional discovery and expert(s) would be needed and called that should not be done and called during the bad faith case."  Upon review, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable.  Therefore, we hold that the trial court did not abuse its discretion when it permitted appellee to amend his complaint shortly before the trial on bad faith.

9.

**{¶ 22}** Accordingly, appellant's first assignment of error is not well-taken.

### B. Supplemental Report of Appellee's Expert

**{¶ 23}** In its second assignment of error, appellant argues the trial court erred by allowing appellee's expert to provide a supplemental expert report three days before trial. We review discovery rulings, including rulings related to the disclosure of experts and the use of expert-opinion testimony, for an abuse of discretion. *Van Sommeren v. Gibson*, 2013-Ohio-2602, 991 N.E.2d 1199, ¶ 45 (6th Dist.), citing *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 45-46, 472 N.E.2d 704 (1984).

**{¶ 24}** Here, the trial court ordered that any expert reports shall be provided by July 31, 2015. The parties do not dispute that the original report from appellee's expert, Charles Miller, was timely provided. On January 13, 2016, appellant deposed Miller. At the deposition, appellant asked if Miller had any changes or supplements to his report, and Miller responded "No." Three days later, on Saturday morning, January 16, 2016, counsel for appellant received a supplemental report from Miller. Trial began on January 19, 2016.

**{¶ 25}** At the beginning of the trial, appellant objected to appellee's use of the supplemental report, arguing that the late notice of the report prejudiced appellant from preparing its defense. In response, appellee explained that the supplemental report was provided in response to the expert's evaluation of the testimony of appellant's claim handler, Michael Calvert, which was not taken until January 11, 2016. Thus, appellee explained that after Calvert's deposition, a transcript of the deposition was expedited and provided to Miller, who produced a supplemental expert report within a matter of days,

10.

and the supplemental report was provided to appellant on the evening of January 15, 2016. In consideration of the parties' arguments, the trial court overruled appellant's objection.

{¶ 26} On appeal, appellant argues that the trial court's decision was an abuse of discretion, and was not consistent with its separate January 15, 2016 decision to exclude appellant's expert witnesses. Notably, although stating generally that it was prejudiced, appellant does not describe the manner in which the trial court's ruling impacted its ability to present its defense.

{¶ 27} We find that the court's decisions were not inconsistent. Unlike the situation with Miller, the trial court denied appellant's attempt to have two attorneys testify as expert witnesses because appellant never provided *any* expert report from the witnesses. In contrast, Miller timely provided his original expert report, and his supplemental report was provided within four days of receiving additional testimony from one of appellant's employees. Therefore, on the basis of this record, we hold that the trial court did not abuse its discretion in allowing Miller to supplement his expert report on the eve of trial.

{¶ 28} Accordingly, appellant's second assignment of error is not well-taken.

### C. Motion in Limine to Exclude Expert Testimony Regarding Alleged Violations of the Unfair Claims Settlement Practices Act

{¶ 29} In its third assignment of error, appellant argues the trial court erred by denying its motion in limine to exclude Miller's testimony regarding alleged violations of standards promulgated by the superintendent of insurance under the Unfair Claims

11.

Settlement Practices Act ("UCSPA"), as found in Ohio Adm.Code 3901-1-54, and by including those standards in the jury instructions. We review the denial of appellant's motion in limine for an abuse of discretion. *Thakur v. Health Care & Retirement Corp. of Am.*, 6th Dist. Lucas No. L-08-1377, 2009-Ohio-2765, ¶ 16. We review whether the trial court's disputed jury instruction correctly stated the applicable law de novo. *State v. Heiney*, 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 133 (6th Dist.), citing *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22.

{¶ 30} In Ohio, an insurer acts in bad faith where "[it] fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397 (1994). Appellant argues that by allowing Miller to testify to violations of the standards set forth in the UCSPA, and by instructing the jury on those standards, the trial court confused the jury, and substituted violation of those standards as the definition of bad faith. We agree.

{¶ 31} In *Furr v. State Farm Mut. Auto. Ins. Co.*, 128 Ohio App.3d 607, 716 N.E.2d 250 (6th Dist.1998), a bad faith claim was brought against Milwaukee Guardian Insurance Company ("Milwaukee") for its conduct in settling an uninsured motorist coverage claim. During the trial on the bad faith claim, the plaintiff presented expert testimony regarding Ohio Adm.Code 3901-1-54 as evidence of the standard of care required by insurance companies, and that Milwaukee did not comply with that standard of care. *Id.* at 615. On appeal, we recognized that "the Ohio Administrative Code does

12.

not create a private cause of action for violation of its rules and, therefore, should not be considered as evidence of bad faith." *Id.* at 616. However, we found that because Milwaukee did not object to the expert's testimony, it waived all but plain error. *Id.* at 615. We then held that the expert's discussion of the Ohio Administrative Code did not affect the "basic fairness, integrity, or public reputation of the judicial process," and therefore declined to consider Milwaukee's arguments. *Id.* at 615-616. Here, in contrast, appellant objected to Miller's testimony regarding violations of the standards set forth in the Ohio Administrative Code, thus plain error does not apply.

{¶ 32} Our decision in *Furr* cited, and was consistent with, *Griffith v. Buckeye Union Ins. Co.*, 10th Dist. Franklin No. 86AP-1063, 1987 Ohio App. LEXIS 8971 (Sept. 29, 1987). In that case, the Tenth District affirmed the trial court's directed verdict in favor of the insurance company on the plaintiff's bad faith claim. As part of the analysis, the Tenth District reasoned:

> Plaintiffs also contend that R.C. 3901.21 and its corollary Ohio Adm. Code 3901-1-07 et seq. are evidence of the standard of conduct required by an insurer doing business in its jurisdiction. The Ohio Department of Insurance rules, however, do not create a private cause of action, but are regulatory in nature. Thus, the rules cannot be considered evidence of the applicable standard of bad faith. *Id.* at *16-17.

*See also Price v. Dillon*, 7th Dist. Mahoning Nos. 07-MA-75, 07-MA-76, 2008-Ohio-1178, ¶ 35-36 (recognizing that alleged violations of Ohio Adm.Code 3901-1-54 do not constitute evidence of bad faith).

13.

{¶ 33} In opposition, appellee cites several cases to support its position that the UCSPA is a standard that can be used to judge the insurance company's conduct in bad faith claims. We find all of appellee's cases to be distinguishable.

{¶ 34} Appellee first cites *Wright v. State Farm Fire & Cas. Co.*, 555 Fed.Appx. 575 (6th Cir.2014). In that case, the insured sued his insurance company for failure to cover the cost of replacing his entire roof after part of it was damaged in a storm. The Sixth Circuit, in its analysis, discussed the applicability of Ohio Adm.Code 3901-1-54(I)(1)(b) in defining the duties owed by the insurance company to the insured under their contract. In this context, the Sixth Circuit recognized that "[the Ohio Administrative Code] may provide evidence of industry practice relevant to construing an insurer's contractual obligations during the claims process." *Wright* at 579, fn. 1. Importantly, the Sixth Circuit's discussion on this subject was limited to the insured's breach of contract claim, and was unrelated to the insured's claim of bad faith. Thus, *Wright* provides no support for the proposition that violations of the Ohio Administrative Code constitute evidence of bad faith. Likewise, appellee's reference to *Zinser v. Auto-Owners Ins. Co.*, 12th Dist. Butler No. CA2016-08-144, 2017-Ohio-5668, and *Am. Storage Ctrs. v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718 (N.D.Ohio 2009), are unhelpful for the same reason that they do not address claims of bad faith.

{¶ 35} Appellee also cites two decisions from our district. In *Arp v. Am. Family Ins. Co.*, 187 Ohio App.3d 561, 2010-Ohio-2250, 932 N.E.2d 968 (6th Dist.), the insured appealed a decision of the trial court granting summary judgment in favor of the insurance company on the basis of a contractual one-year period of limitations. In that

14.

case, the insured suffered a house fire, and submitted a claim for the loss of his house and its contents. Shortly thereafter, the insurance company notified the insured that there was a question concerning whether the fire may have been an intentional loss arising out of an act committed by the insured. Nearly one year after the fire, the insurance company requested additional documentation to proceed with the claim. The insured expressed his exasperation that the insurance company had not yet processed his claim and informed the insurance company that the one-year limitation period for filing suit was almost expired. The insurance company responded that the terms of the contract required full compliance with the insurance policy, and its position was that if the insured filed suit before providing the requested documents, the suit would be dismissed. The insured did not file suit within the one-year limitation. Eight months later, and after the further provision of documents, the insurance company still had not denied or accepted the insured's claim of loss. Thus, the insured commenced his action, which the insurance company argued was barred by the contractual period of limitations. On appeal, we reversed the decision of the trial court, holding that genuine issues of material fact existed regarding whether the insurance company recognized liability by making some payments under the policy, and whether the insurance company's actions caused the insured to have a reasonable hope of adjustment which delayed him in filing suit before the one-year period expired. *Id.* at ¶ 35. In our reasoning, we found "that [the insurance company] cannot simply avoid its duty to determine [the insured's] right to coverage by ignoring the fact that it has in its possession the documentation requested," citing the standard under Ohio Adm.Code 3901-1-54(G)(1). *Id.* at ¶ 34.

15.

{¶ 36} Our holding in *Arp* is completely inapplicable here. Our comment in *Arp* regarding the duty to determine the claim was made in the context of the enforceability of a one-year contractual limitation period, not in relation to a bad faith claim. Indeed, nothing in *Arp* suggests that a violation of the Ohio Administrative Code can be used to demonstrate that the insurance company acted in bad faith.

{¶ 37} The second case from our district cited by appellee similarly offers no support for appellee's proposition. In *Lynch v. Hawkins*, 175 Ohio App.3d 695, 2008-Ohio-1300, 888 N.E.2d 1149 (6th Dist.), we held that Ohio Adm.Code 3901-1-54(G)(5) did not obligate the insurance company to give the insured notice that sixty days remained before the expiration of time within which to file suit. Thus, we ultimately concluded that summary judgment in favor of the insurance company was appropriate where the complaint was filed outside of the three-year limitations period for bringing actions against the insurer for underinsured motorist claims. Notably, there were no bad faith claims addressed in *Lynch*.

{¶ 38} Therefore, consistent with our decision in *Furr*, 128 Ohio App.3d 607, 716 N.E.2d 250, and in the absence of any relevant contrary authority cited by appellee, we hold that evidence of alleged violations of the UCSPA does not constitute evidence of bad faith, and it was error for the trial court to admit such evidence. Furthermore, because the evidence should not have been admitted, we hold that the trial court erred in instructing the jury that it could consider violations of the UCSPA in determining whether appellant acted without reasonable justification.

{¶ 39} Accordingly, appellant's third assignment of error is well-taken.

16.

### D. Attorney Fees in Underlying Negligence Claim

{¶ 40} In its fourth assignment of error, appellant argues that the trial court erred in permitting appellee to pursue a claim for attorneys' fees in a breach of contract claim. In particular, appellant argues that the trial court abused its discretion in allowing evidence in the bad faith portion of the trial relating to $66,000 in attorney fees that appellee incurred in pursuing the underlying negligence claim. The $66,000 in attorney fees was awarded to appellee by the jury as part of the $352,277.36 verdict in the bad faith claim. However, as discussed at the outset of our analysis, appellant has voluntarily paid the $352,277.26 judgment. Therefore, there is no longer an active controversy, and appellant's assignment of error is moot. *See Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990) ("Where * * * the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.").

{¶ 41} Accordingly, appellant's fourth assignment of error is not well-taken.

### E. Trial Court's Solicitation of Factually Incorrect Testimony

{¶ 42} Next, in its fifth assignment of error, appellant argues that the trial court erred when it misstated facts to the jury regarding appellee's involvement in a prior appeal. During appellant's cross-examination of appellee, appellant attempted to demonstrate that appellee appealed from the judgment in the underlying negligence action:

17.

[MR. PELINI (counsel for appellant)]: Now, ultimately, sir, the jury did not give $500,000, did they.

[MR. BRUMMITT]: No, they did not.

Q: And the jury did not give $400,000, did they.

A: No, they did not.

Q: And, sir, the jury disagreed with your evaluation of your case, right?

A: Yes.

Q: After the jury verdict – and you were disappointed and you disagreed with the jury, right?

A: Yes, I did.

Q: And, sir, afterward there were motions filed. You recall that?

A: Yes.

Q: And after that, there were appeals filed on your behalf --

A: Yes, uh huh.

Q: -- and your wife; is that correct?

* * *

A: Correct.

Appellant argues that this was done to counter appellee's claim that appellant acted in bad faith when it did not pay the underlying negligence judgment for over two years, and to prove that it was justified in withholding payment while appellee pursued his appeal.

**{¶ 43}** Before an objection was even raised, the trial court ordered counsel to approach, wherein the following conversation occurred at the bench:

MS. MURRAY (counsel for appellee): I was ready to pop up.

COURT: I just didn't want this jury to be misled. The -- the motion for new trial was only on behalf of his wife.

MR. PELINI: Right.

COURT: It was not (inaudible) his verdict. The appeal was only on behalf of his wife and the denial of new trial, not on his verdict, not on anything that he --

MR. PELINI: Not on his verdict, no.

COURT: Right. You're talking collectively, but now you talked about the appeals, and I just don't want the jury misled --

MR. PELINI: No.

COURT: -- that he was appealing and those motions were filed on behalf of his verdict.

MR. PELINI: No.

COURT: If you could please be clear or clarify a new question so the jury gets a true understanding, okay?

MR. PELINI: Okay. I think I can -- * * * -- clear it up with one question.

* * *

Q: Mr. Brummitt, the appeal involved procedural matters that happened in the case up to that point, correct --

A: Correct.

Q: -- and the appeal was filed.

A: Uh huh.

{¶ 44} Later, during re-cross examination, the trial court expressed its belief that counsel for appellant had not cleared up the issue:

COURT: * * * I asked you to clean up that issue about the thing that -- the appeal and the filing of those motions was just on behalf of his wife and not on behalf of him. You said you would clear it up, and you didn't clear it up. If you don't, I will.

MR. PELINI: I thought it was about procedural --

COURT: No, it was all on behalf of his wife. Go back and look at the filings. Go back and read the opinion. He didn't -- he never appealed, or even a motion for new trial --

MR. PELINI: No.

COURT: I'm Looking at it right here. The motion for the new trial was on --

MR. PELINI: Right.

COURT: -- his wife, not on him.

MR. PELINI: Okay.

COURT: That misled the jury. I asked you to clean that up.

MR. PELINI:  Okay.

COURT:  Okay.  This I want cleaned up, too, or I will, okay?

Counsel for appellant then resumed his questioning, and asked appellee:

Q:  Okay.  Now, and I also wanted to cover the appeal.  The appeal was -- was handled -- you didn't ask for more money in your appeal, right?  There were procedural issues, but not more money.

A:  Yeah.

Apparently dissatisfied with counsel's efforts, the trial court then asked its own questions of appellee:

COURT:  And the motions for new trials and the motions pending before the Court were on behalf of your wife's case, not yours, correct?

A:  Correct.

COURT:  And the appeal that went to the Court of Appeals was on behalf of your wife correct?

A:  Correct.

COURT:  Not on behalf of yours?

A:  Right.

{¶ 45} On appeal, appellant argues that the trial court's questioning was factually incorrect.  Further, it argues that the court's questioning prejudiced appellant because it made counsel look disingenuous in front of the jury, and because it left appellant in the position where it could not argue that the delay of payment was justified during appellee's appeal since the jury was under the impression that he did not appeal.

21.

**{¶ 46}** In response, appellee presents three arguments. First, appellee states that appellant did not object to the trial court's line of questioning, and therefore has waived all but plain error. However, we hold that a formal objection was not required in this instance. "[I]f a party makes his position sufficiently clear to give the court an opportunity to correct a mistake or defect, then the rationale for formally objecting is no longer present." *State v. Wolons*, 44 Ohio St.3d 64, 67, 541 N.E.2d 443 (1989) (applying the principle in the context of an appeal from the trial court's failure to give certain jury instructions). Here, appellant's disagreement with the trial court regarding whether appellee appealed the underlying negligence judgment was plainly evident, and we fail to see the purpose of requiring appellant to futilely object to the trial court's own questioning. Therefore, we will not apply the plain error standard, but instead apply the abuse of discretion standard that generally applies to evidentiary matters. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 43 ("The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."); *see also State v. Martin*, 4th Dist. Pickaway No. 04CA24, 2005-Ohio-1732, ¶ 27 ("In reviewing whether a trial court erred by questioning a witness, we apply the abuse of discretion standard of review.").

**{¶ 47}** Appellee also argues that the trial court's questions were accurate statements of the facts. The litigation history demonstrates otherwise. While it is true that appellee did not file a motion for new trial, or otherwise challenge the amount of the jury verdict, appellee still joined his wife's estate in filing a notice of appeal.

22.

Furthermore, appellee's first assignment of error in that appeal challenged the trial court's decision to bifurcate the claim of bad faith from the underlying negligence claim. If appellee had been successful on that assignment of error, the remedy would have been to vacate the underlying negligence judgment and remand the matter for a new trial, which is precisely the relief that he requested: "Plaintiffs request that this court vacate the trial court's finding that discovery of the claims file be stayed in its order of May 1, 2013; overrule the *sua sponte* order of the trial court allowing bifurcation; and overrule the Trial Court's denial of Plaintiffs' Motion for a New Trial issued May 29, 2013 and remand for a new trial." Therefore, we find that it was factually incorrect for the trial court to take the position, and elicit testimony, that appellee did not appeal the underlying negligence judgment.

{¶ 48} Finally, appellee argues that appellant was not prejudiced by the trial court's factually incorrect questioning. We disagree. In the second interrogatory posed to the jury, the jurors were asked to "Describe the manner in which you find Defendant Ohio Mutual Insurance Group acted in bad faith in the handling, processing and/or payment of Bobby Brummitt's claim." The jury responded: "We feel that payment was not made in a timely manner, nor was the settlement offered in a timely manner. We also feel that the defendant was not concerned with the plaintiff's well being." In this case, the jury's first basis for finding that appellant acted in bad faith is directly related to the error raised by appellant; i.e., that it was prevented from demonstrating that it was justified in withholding payment while appellee pursued his appeal. Thus, we find that appellant was materially prejudiced by the trial court's factually incorrect questioning.

23.

{¶ 49} "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 256 N.E.2d 613 (1970), paragraph three of the syllabus. Here, the trial court questioned appellee based upon a factually mistaken understanding of the litigation history, and in so doing prevented appellant from presenting a defense on the issue that ultimately became the first reason cited by the jury in its finding that appellant acted in bad faith. Therefore, we hold that the trial court's questioning constituted an abuse of discretion.

{¶ 50} Accordingly, appellant's fifth assignment of error is well-taken.

### F. Motions for Mistrial

{¶ 51} Appellant's sixth, seventh, and eighth assignments of error all address whether the trial court abused its discretion when it did not declare a mistrial following improper conduct or questioning by appellee's counsel. We will discuss the assignments of error in the chronological order of the conduct that occurred.

{¶ 52} The grant or denial of a mistrial rests within the discretion of the trial court and is subject to review on appeal under an abuse of discretion standard. *Carper v. Snodgrass*, 6th Dist. Lucas No. L-03-1065, 2003-Ohio-6975, ¶ 13, citing *Quellos v. Quellos*, 96 Ohio App.3d 31, 41, 643 N.E.2d 1173 (8th Dist.1994). "A mistrial should only be granted where the party seeking the same demonstrates that he or she suffered material prejudice so that a fair trial is no longer possible." *Id.*, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

24.

{¶ 53} In its seventh assignment of error, appellant argues that the trial court abused its discretion when it did not declare a mistrial after appellee's counsel asked a witness, "Did you note that in that, in your notes, that [appellee's] counsel had insisted on 5 to 6 million for this part of the trial?" Appellant immediately objected to the question, which the trial court sustained. The court then ordered that the question and answer be stricken.

{¶ 54} Evid.R. 408 states, "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount."

{¶ 55} Appellant argues that counsel's inquiry into the five to six million dollar valuation was solely intended to signal to the jury that a verdict in that amount would not be unreasonable on the bad faith claim. It concludes that the question was highly prejudicial, and it was error not to declare a mistrial. Additionally, appellant argues that the error was compounded by the trial court's decision to grant a protective order prohibiting appellant from taking the deposition of appellee's counsel regarding the factual circumstances of the settlement negotiations in the underlying negligence claim.

{¶ 56} As to the latter argument, we find that any relationship between the trial court's decision to grant the protective order and the prejudice resulting from appellee's inquiry into a five to six million dollar valuation is tenuous at best. Appellant claims that the protective order prevented it from adequately preparing a defense to the assertion.

25.

However, appellant's objection to the question was sustained, and the question was stricken, so there was no assertion that it needed to defend against.

{¶ 57} Returning to the prejudicial effect of the actual question, although appellee does not dispute that the question was improper, and concedes that the trial court properly sustained the objection,[2] appellee contends that the question had minimal effect on the jury because it was immediately stricken. Thus, appellee contends the trial court did not abuse its discretion in denying the motion for a mistrial. We agree.

{¶ 58} It is well-settled that "[a] jury is presumed to follow the instructions given to it by the trial judge." *State v. Loza*, 71 Ohio St.3d 61, 75, 641 N.E.2d 1082 (1994). Here, immediately after the question was asked, the trial court sustained the objection and ordered the question and answer to be stricken. On appeal, appellant has not called to our attention anything that would indicate that the jury ignored the trial court's instruction. Furthermore, as appellee notes, the jury's verdict was less than one tenth of the value announced by appellee's counsel, which suggests that the jury was not influenced by the

---

[2] Interestingly, appellee explains that the question was asked "to refresh the recollection of [the witness] that [appellee] had been requesting punitive damages from the outset of this lawsuit." This is directly contradicted by the record. In the sidebar discussing the objection and motion for mistrial, the following exchange occurred:

COURT: Okay. I think we're reading this because the -- what you're talking about was also the punitive end, which would come after this bad faith claim, right?

MR. MURRAY (counsel for appellee): No, I was talking about just bad faith.

Thus, the five to six million dollar valuation was only about the bad faith claim, and had no relation to punitive damages.

valuation. Therefore, we hold that the trial court did not abuse its discretion in denying appellant's motion to declare a mistrial.

{¶ 59} Accordingly, appellant's seventh assignment of error is not well-taken.

{¶ 60} Appellant's sixth assignment of error challenges the trial court's denial of its motion for a mistrial following appellee's violation of the court's "cold shoulder" rule by offering condolences to a juror during closing arguments.

{¶ 61} During the course of the trial, the court instructed the attorneys that "[y]ou are to give the jurors the cold shoulder when you're not in the Courtroom during this trial." Nonetheless, during closing arguments, counsel for appellee briefly made a direct connection with one of the jurors, whose husband was a firefighter. Counsel offered her condolences and well wishes regarding another former firefighter who was recently seriously injured, and whom counsel assumed was a good friend of the juror's family. Appellee does not dispute that this comment was inappropriate. Prior to deliberations, the trial court dismissed the juror to whom the comment was made, and replaced her with an alternate.

{¶ 62} Appellant argues on appeal that counsel's comment was highly prejudicial because it reiterated appellee's "hometown" connection, and appealed to the emotions of not just the single juror, but the entire jury panel. Appellee, on the other hand, argues that any prejudice was dissipated when the trial court dismissed the juror. Upon review, we find that the trial court's response in dismissing the juror was a reasonable remedy, and that any potential impact upon the remaining jurors was negligible. Therefore, we

27.

hold that the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

{¶ 63} Accordingly, appellant's sixth assignment of error is not well-taken.

{¶ 64} Finally, in its eighth assignment of error, appellant argues that the trial court abused its discretion in not declaring a mistrial in the punitive damages phase of the trial after appellee's counsel inquired of appellant's representative whether appellant had insurance "for this matter." Specifically, appellee's counsel stated, "One last question. You, in fact, have insurance for this matter, do you not?" Appellant immediately objected, and the parties approached for a sidebar conference.

{¶ 65} During the conference, the trial court sustained the objection. Appellant then vigorously advocated for a mistrial, citing the cumulative effect of "issue upon issue," such as statements of condolences to the jurors. After denying appellant's motion for a mistrial, the trial court ended the sidebar conference and dismissed the jury for a mid-morning break. When the jury returned, counsel for appellee continued his examination of appellant's representative. It was not until the end of the direct examination that the trial court instructed the jury, "Before we went on break there was a question from Plaintiff's counsel about insurance, that question is stricken, disregard it."

{¶ 66} On appeal, appellant argues that the question was a "calculated move by an experienced trial lawyer to inject the existence of insurance coverage into the jury's deliberation," was entirely improper, and resulted in extreme prejudice to appellant.

28.

**{¶ 67}** Evid.R. 411 provides,

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness.

Ohio courts have routinely recognized the risk of prejudice associated with evidence of liability insurance in that it may "improperly influence a jury to award greater damages than warranted -- or even to find liability where unwarranted -- because it is an impersonal and wealthy insurance company that will ultimately pay damages instead of the individual defendant." *Cook v. Wineberry Deli, Inc.*, 9th Dist. Summit No. 14841, 1991 Ohio App. LEXIS 3360, *30 (July 17, 1991). *See also Ockenden v. Griggs*, 10th Dist. Franklin No. 07AP-235, 2008-Ohio-2275, ¶ 13 ("Evidence of liability insurance is highly prejudicial and is admissible at trial only if directly relevant to an issue at trial, as it may improperly influence a jury with respect to their finding of liability or damages. (Internal quotation omitted.)); *Britton v. Gibbs Assocs.*, 4th Dist. Highland No. 08CA9, 2009-Ohio-3943, ¶ 41 (recognizing that while "given the sophistication of our juries, the first sentence of Evid.R. 411 * * * does not merit the enhanced importance it has been given, * * * * testimony regarding a defendant's liability insurance may be grounds for reversal when the testimony is introduced solely to prejudice the jury" (Internal quotation omitted.)); *White v. Standard Oil Co.*, 116 Ohio App. 212, 220, 187 N.E.2d 504 (3d

29.

Dist.1962) ("[A] trial lawyer is treading on dangerous ground and always approaches grounds for a mistrial by the mere mention of insurance when same is not at issue.").

{¶ 68} Appellee, on the other hand, argues that counsel's question was permissible under Evid.R. 411 because it would have helped establish on the record that appellant was not prejudiced by the second amended complaint, as discussed in appellant's first assignment of error, because appellant was made aware of the potential for punitive damages as early as December 2012. As such, appellee claims that counsel did not ask the question "with the intent to improperly interject the idea of insurance into the jury's consideration."

{¶ 69} Appellee's position is wholly without merit for two reasons. First, this court cannot understand how any unfair prejudice suffered by appellant as a result of the inclusion of a claim for punitive damages in the second amended complaint was an issue before the jury. Second, appellee's counsel admittedly asked the question with the intent to interject the idea of insurance into the jury's consideration. Counsel himself stated during the sidebar conference, "[T]he point is that when you consider the ability of a defendant to be able to pay a punitive damage award and in what amount, I believe it becomes relevant to the inquiry as to the coverage that they have and that's the reason I asked the question."

{¶ 70} Nevertheless, we hold that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Here, we find that the prejudice was minimal in that appellant's representative did not answer the question. Furthermore, we find that any prejudice was ameliorated by the trial court's decision to sustain the objection, and

30.

instruction to the jury to disregard it. As noted by the trial court, it had taken an active role in protecting appellant's rights by striking questions and testimony where necessary, and even dismissing a juror. Thus, we cannot conclude that its decision not to declare a mistrial was unreasonable, arbitrary, or unconscionable.

{¶ 71} Accordingly, appellant's eighth assignment of error is not well-taken.

### G. Pre-judgment Interest on Bad Faith Judgment

{¶ 72} Finally, in its ninth assignment of error, as presented in its supplemental brief, appellant argues that the trial court erred when it reversed the decision of the magistrate and awarded pre-judgment interest on the bad faith judgment.

{¶ 73} R.C. 1343.03(C)(1) allows for a plaintiff who has received a money judgment in a tort action to receive prejudgment interest if "the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." A party will not have "failed to make a good faith effort to settle" where he or she has: "(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain v. Smith*, 25 Ohio St.3d 157, 159, 495 N.E.2d 572 (1986).

{¶ 74} "The burden of proof is on the party seeking prejudgment interest." *Riley v. Frank*, 6th Dist. Fulton Nos. F-14-007, F-14-008, 2015-Ohio-1478, ¶ 10, citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 659, 635 N.E.2d 331 (1994).

Whether a party has demonstrated a failure of good faith effort to settle is generally within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Id.* at ¶ 11, citing *Moskovitz* at 658.

{¶ 75} In support of its assignment of error, appellant argues that the magistrate properly found that appellee had not satisfied his burden to establish a failure of good faith effort to settle based upon the meager testimony presented at the hearing on prejudgment interest. Appellant contends that the trial court then abused its discretion when it relied on its own bias and personal opinions of appellant's conduct to determine that appellant failed to make a good faith effort to settle. In particular, appellant challenges the trial court's determination that appellant did not fully cooperate in discovery proceedings, and failed to make a good faith monetary settlement offer.

{¶ 76} As a backdrop to our analysis, we note that in determining whether appellant made a good faith effort to settle, the trial court was not limited solely to the testimony presented at the hearing. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 34, 734 N.E.2d 782 (2000). "The court may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses." *Id.*

{¶ 77} As to whether appellant fully cooperated in discovery proceedings, the trial court relied on three facts. First, appellant did not timely turn over the entire claim file. Earlier in the litigation, during the negligence phase, appellant submitted the claim file to the trial court for in camera review. Following our decision on January 9, 2015, resolving appellee's appeal of the negligence judgment, the trial court completed its in

32.

camera review, and on September 25, 2015, ordered appellant to turn over almost the entire claim file. However, the court found that appellant, without reasonable explanation, failed to turn over the materials to appellee until November 2, 2015. Second, the trial court found that even when the claim file was turned over, several documents were still missing. Third, the trial court found that appellant did not cooperate with a court order giving the parties 30 days to determine the accrual date for possible pre-judgment interest on the underlying negligence judgment. Ten days after the 30-day period expired, the trial court received a memorandum from appellee detailing that no agreement was reached because of appellant's lack of action. The court noted that appellant waited 24 days before giving appellee the materials needed to determine the accrual date. Therefore, the trial court found that appellant did not fully cooperate in the discovery proceedings.

{¶ 78} As to whether appellant made a good faith monetary offer, the trial court relied on the fact that appellant's pre-trial offer of $30,000 was a fraction of the verdict ultimately awarded, thus suggesting that appellant had not rationally evaluated its risks and liabilities. Further supporting this conclusion was the fact that appellant's settlement offer "mushroomed" to $269,000 on the second day of trial, indicating that either appellant did not evaluate the risks and potential liability soon enough, or that appellant's earlier pre-trial settlement offers were merely gamesmanship. Thus, the trial court concluded that appellant did not negotiate in good faith.

33.

{¶ 79} In light of the foregoing, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable. Therefore, we hold that the trial court did not abuse its discretion when it awarded $33,586.99 in prejudgment interest to appellee on the bad faith judgment.

{¶ 80} Accordingly, appellant's ninth assignment of error is not well-taken.

### H. Cross-Appeal on Attorney Fee Award

{¶ 81} Turning to appellee's cross-appeal of the judgment awarding attorney fees, we find that our resolution of appellant's third and fifth assignments of error requires us to reverse and vacate the jury's award of punitive damages, which in turn requires us to vacate the trial court's judgment awarding attorney fees. *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558, 644 N.E.2d 397 (1994) ("[An] insured is not automatically entitled to interest or attorney fees. * * * Attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted."). Therefore, appellee's first and second assignments of error on cross-appeal are moot.

{¶ 82} Accordingly, appellee's first and second assignments of error on cross-appeal are not well-taken.

### IV. Conclusion

{¶ 83} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the February 8, 2016 judgment of the Erie County Court of Common Pleas is reversed as to the award of punitive damages. Furthermore, the trial court's May 5, 2017 judgment awarding attorney fees is also reversed. Finally, the trial

34.

court's May 7, 2018 judgment awarding pre-judgment interest on the bad faith claim is affirmed. This cause is remanded to the trial court for further proceedings consistent with this decision. Costs of the appeal are to be shared evenly between the parties pursuant to App.R. 24.

Judgment affirmed, in part,<br>
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____
JUDGE

Arlene Singer, J.       

_____
Thomas J. Osowik, J.        JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.